## Court of Appeals.

### January 17, 1893.

### PEOPLE v. JAMES H. PHYFE.

(49 St. Rep. 680; 136 N. Y. 554.)

Railroads—Ten hour law
> The second and third sections of chapter 711 of 1892 are not penal in their scope, and a superintendent of a steam surface railroad owned and operated within this state, who requires an employe to work continuously for fourteen and a half hours and refuses to pay him any more than the day's wages, cannot be punished criminally under said statute.

Appeal from judgment of the supreme court, general term, second department, affirming a judgment entered on conviction of misdemeanor under chapter 711, Laws 1892.

Hamilton Harris, for appellant.

W. Popham Platt, for respondents.

MAYNARD, J.—The defendant was indicted for a violation of the provisions of chapter 711 of the Laws of 1892, entitled "An act to provide for a limit of hours of service on railroads." The indictment in substance charged that the defendant was on June 1, 1892, a superintendent of a steam surface railroad operated within this state by a domestic railroad corporation, and that he employed complainant as a trainman on freight trains under his direction at two dollars and ten cents a day, payable at the end of each day, and that he required the complainant to work as and for his day's work fourteen and one-half hours continuously without any part of such continuous service being caused by any unavoidable accident or delay, and that the complainant demanded pay of the defendant for the four and one-half hours of extra service and labor at the same comparative compensation as he was to receive for his daily pay; and that the defendant refused to pay him any comparative compensation for such extra labor in addition to the sum of two dollars and ten cents, which he offered to pay him in full for his labor on that day; and on the refusal of the complainant to receive this sum, the defendant discharged him from the service of the railroad company. The defendant demurred to the indictment on the ground that the facts stated therein do not constitute a crime, and the demurrer was overruled at the Westchester oyer and terminer, and the defendant plead not guilty, but admitted the doing of the acts set forth in the indictment, and the jury thereupon rendered a verdict of guilty, and the defendant was sentenced to pay a fine of five hundred dollars.

The learned counsel for the appellant has devoted his argument principally to a discussion of the question of the constitutionality of this enactment; and it is insisted that this statute is an unlawful invasion of the liberty of the citizen, because it seeks unnecessarily to interfere with or limit his right of labor, and to contract with others for the fruits of their labor. But the abstract question thus presented is very materially affected by the consideration that the defendant is the agent or representative of a domestic corporation of a quasi public character, over whose business the state can lawfully exercise the power of supervision, and control the details of its management to an extent to which it has never undertaken to go in the regula-

tion of the affairs of private individuals. How far this supervision may be carried without overriding constitutional safeguards is a question of great moment for the People and of vital concern to the vast property rights and interests which must always be affected by its ultimate determination. It is a problem of such gravity that its solution should not be undertaken by any court unless it is directly and necessarily involved in the case upon which its presentation is predicated.

A careful analysis of the structure of this act, we think, will result in an entire failure to find any provision in it which impresses upon the conduct of the defendant as set forth in the indictment the stamp of criminality. The first section declares that no railroad corporation shall permit or require certain classes of employees, who are specially charged with the responsibility for the movement of trains, who have worked continuously for twenty-four hours, to go on duty again until they have had at least eight hours rest. And the last section supplements this prohibition with a provision which makes the disregard of it a misdemeanor. In view of the great danger to, and even destruction of life and property, which might result from the attempt of men who have become enfeebled by prolonged and exhausting effort to control engines and cars when in motion, it might be claimed that it was within the province of the legislature to enact such a law, and make the violation of it a crime; that it was a reasonable exercise of the police power of the state, and was also a lawful assertion of its reserved right to regulate corporations of this character in their relations to the public. But no violation of this section is charged in the indictment, and we are, therefore, not required to decide that question.

When we examine the two remaining sections (2 and 3), we fail to find in them any inhibition upon the action of these corporations, either by express words or by necessary implication. The second section merely declares that ten hours labor performed within twelve consecutive hours shall constitute a day's labor in the operation of all steam surface railroads owned and operated within this state, omitting the provisos and exceptions, which are not material here. It is but a statutory definition of what shall constitute a day's labor in certain employments,

and would control in any controversy affecting the civil liabilities of the employer in the absence of the express agreement to the contrary. There is no prohibition aimed at the railroad company against permitting or requiring more hours of labor during the calendar day. · In fact, the section authorizes the employment of men to labor at least twenty hours out of every twenty-four. The statement is that ten hours work within twelve consecutive hours shall be a day's labor, and there may, therefore, be two such days during each calendar day, and an employee working for twenty hours at an agreed daily compensation without any stipulation as to the number of hours which should constitute a day would be entitled to pay for two days' work. Such a provision is eminently fair and just in operation, and the power of the legislature to enact such a law cannot be successfully controverted. The third section is in harmony with this construction, for it provides that for fractional parts of the statutory day the employee shall receive compensation at the same rate proportionately as for the whole day. Full effect can be given to both sections by con- · struing them according to their terms, and applying them to an adjustment of the contractual relations of the parties, when they have omitted to prescribe in the agreement for hire the duration of a day's service. If the legislature had intended to make it unlawful for a railroad company to permit, or require, an employee to work more than ten hours within twelve consecutive hours, we must infer that they would have so declared in direct terms. The prohibition of the first section is plain and positive; and the change in the form of expression, when the following sections are reached, is significant; and indicates an intentional omission of the prohibitory feature. The conduct which it is sought by the force of the statute to condemn has heretofore had the sanction of the law, and it is a familiar canon of construction that an intention to change the rule of the common law will not be presumed from doubtful provisions, and the presumption is that no such change was intended, unless the enactment is clear and explicit in that direction; and if the terms of statute will admit of two interpretations, that which will most nearly conform to the rules of the common law is in all cases to be adopted. Rights and liberties which

have been enjoyed without question from time immemorial are not to be abridged or denied by legislative action "except by clear, unambiguous and peremptory language." Sedgwick on Stat. L. 318. We express no opinion as to the extent to which the sovereign power may go in restricting the exercise of what are sometimes termed the natural rights and privileges of the individual parties to the social compact; or how far their freedom of action may be controlled by statutory regulations, especially when dealing with artificial persons whose existence depends upon legislative grace. We are required here to apply that principle of construction, which is coeval with municipal law, that purely statutory offenses can not be established by implication, and that acts otherwise innocent and lawful do not become crimes, unless there is a 'clear and positive expression of the legislative intent to make them criminal. The citizen is entitled to an unequivocal warning before conduct on his part which is not malum in se can be made the occasion of a deprivation of his liberty or property. Under a proper application of these familiar rules of interpretation it must be apparent that the second and third sections of this act are not penal in their scope. No prohibitory words are found in them, and no terms employed from which a prohibition can reasonably be inferred. The language used is consistent with an intent to confine them to a regulation of the private rights and civil liabilities of the contracting parties, and when they can be so construed there is no presumption that more was intended. We are not permitted to speculate as to the motive or design of the lawmakers or to search for a hidden meaning or an unexpressed purpose in the enactment.

The order and judgment of conviction must be reversed; the indictment dismissed and the defendant discharged.

All concur, ANDREWS, Ch. J., PECKHAM and GRAY, JJ., in result.