THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* RICHARD H. STONE, Appellant.

*Indictment — when demurrable — "fertilizer certificate" under chapter 437 of 1890 — a false certificate equivalent to no certificate — a crime cannot be established by implication.*

If an indictment does not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure, it presents a ground of demurrer under section 323 thereof.

Chapter 437 of the Laws of 1890 contains no provision making the act of affixing a false certificate to any package of fertilizers a crime, nor does it directly forbid such an act.

Although, under such act, a false certificate would doubtless be regarded as no certificate, the offense created by such statute is that of omitting to attach the certificate required.

The omission is the principal fact, and as purely statutory offenses cannot be established by implication, such omission cannot be inferred from an allegation in the indictment that there was a false certificate affixed to a package of fertilizers.

No essential element of a crime can be omitted from an indictment without destroying the whole pleading. The omission cannot be supplied by intendment or implication, and the charge must be made directly and not inferentially or by way of recitals.

Under the well-established rules of criminal pleading, the indictment of a person under the provision of chapter 437 of the Laws of 1890, making it a crime to offer for sale fertilizers without a certificate attached thereto, must contain an allegation of the name of the person to whom such offer to sell was made if the name is known, and, if not known, the indictment must allege that the offer to sell was made to a person whose name was unknown.

APPEAL by the defendant, Richard H. Stone, from a judgment of the Court of Sessions held in and for the county of Tompkins, rendered on the 29th day of May, 1894, convicting him of the crime of offering for sale commercial fertilizers with false analysis attached, and sentencing him to pay a fine of $100 and to stand committed to the county jail of Tompkins county until such fine be paid, not exceeding 100 days.

*William N. Noble,* for the appellant.

*J. H. Jennings,* for the respondent.

MARTIN, J. :

The indictment in this case was presented by the grand jury at a term of the Oyer and Terminer held in and for the county of Tompkins on the 28th day of October, 1893.   It was sent to the Court of Sessions for trial, and was as follows :

" COURT OF OYER AND TERMINER OF THE COUNTY OF TOMPKINS.

"THE PEOPLE OF THE STATE OF NEW
        YORK
        *against*
    RICHARD H. STONE.

" The grand jury of the county of Tompkins, by this indictment, accuse Richard H. Stone, of the town of Ulysses, in the county of Tompkins, of the crime of offering for sale commercial fertilizers with false analysis attached, committed as follows :   The said Richard H. Stone, on the 1st day of January, 1892, at the town of Ulysses, in the county of Tompkins and State of New York, and at divers and various other times between that date and the date of the finding of this indictment, at the town of Ulysses, in the county of Tompkins and State of New York, willfully and unlawfully did have in his possession as if for sale, and did offer and expose for sale, to be used in this State, commercial fertilizers contained in packages, on which said packages was printed and attached an analysis purporting to state the percentages of phosphoric acid, potash and ammonia contained in said packages, and which said analysis, so printed on said packages as aforesaid, was accompanied by an affidavit stating that said analysis was a true representation of the contents of said packages, while in truth and in fact said analysis so attached to said packages of commercial fertilizers as aforesaid did not contain a true representation of the contents of said pack-• ages of commercial fertilizers, in that said packages of commercial fertilizers aforesaid were deficient of the amount of phosphoric acid, ammonia and potash set forth and contained in said printed analysis attached to said packages by more than one-half of one per centum of phosphoric acid, and by more than one-half of one per centum of ammonia, and by more than one-half of one per centum of potash. And the said Richard H. Stone did so willfully and unlawfully offer and expose for sale, and have in his possession as if for sale,

said packages of commercial fertilizers as aforesaid, he, the said Richard H. Stone, well knowing that said packages of commercial fertilizers so offered and exposed for sale as aforesaid were deficient in the amount of phosphoric acid, ammonia and potash as above set forth, and that at the time and times hereinabove mentioned, the selling price of said commercial fertilizers was ten dollars per ton or more, and that said selling price of ten dollars per ton or more was fixed and asked by said Richard H. Stone, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

"J. H. JENNINGS,
"*District Attorney.*"

Upon this indictment was the following indorsement: "Court of Oyer and Terminer. The People against Richard Stone. Indictment for offering for sale Commercial Fertilizers with false analysis attached. J. H. Jennings, District Attorney."

To the indictment the defendant interposed a demurrer. The objections raised thereby, briefly stated, are as follows:

1. That the indictment does not conform substantially to the requirements of section 275 of the Code of Criminal Procedure, in that it does not contain a plain and concise statement of the act constituting the crime;

2. That it does not conform substantially to the requirements of section 276 of the Code of Criminal Procedure, in that it does not contain the name of the crime charged or any brief description of it as it is given by statute;

3. That the facts stated therein do not constitute a crime;

4. That the statute (Chap. 437, Laws of 1890) does not make the violation of any of its provisions a crime;

5. That the grand jury had no jurisdiction to take cognizance of the matter; and,

6. That the statute is unconstitutional.

Chapter 437 of the Laws of 1890, which is entitled "An act for the protection and education of farmers and manufacturers in the purchase and sale of fertilizers," by its 1st section provides: "All commercial fertilizers which shall be offered for sale, to be used in this State, shall be accompanied by an analysis stating the percentages contained therein of nitrogen, or its equivalent of ammonia, of

soluble and available phosphoric acid, the available phosphoric acid either to be soluble in water or in a neutral solution of citrate of ammonia as determined by the methods agreed upon by the American Society of Agricultural Chemists, and of potash soluble in distilled water. A legible statement of the analysis of the goods shall be printed on, or attached to, each package of fertilizers offered for sale for use in the State; and where fertilizers are sold in bulk, to be used in this State, an analysis shall accompany the same, with an affidavit that it is a true representation of the contents of the article or articles."

By section 3 it is provided: " Whenever a correct chemical analysis of any fertilizer offered for sale in this State shall show a deficiency of not more than one-third of one per centum of nitrogen, or its equivalent of ammonia, or one-half of one per centum of soluble or available phosphoric acid, and one-half of one per centum of potash soluble in distilled water, such statements shall not be deemed false within the meaning of this act. This act shall apply to all articles of fertilizers offered or exposed for sale for use in the State of New York, the selling price of which is ten dollars per ton or higher, and of which they are part or parcel, and of any element into which they enter as fertilizing material, among which may be enumerated nitrate of soda, sulphate of ammonia, dissolved bone black and bone black undissolved, any phosphate rock, treated or untreated with sulphuric or other acids, ashes from whatever source obtained, potash salts of all kinds, fish scrap, dried or undried, also all combinations of phosphoric acid, nitrogen or potash, from whatever source obtained, as well as all and every article that is or may be combined for fertilizing purposes."

The 5th section declares: "Every person, firm or corporation violating any of the provisions of this act shall, upon conviction thereof, for the first offense, be punished by a fine of not less than fifty dollars, nor more than two hundred dollars; and for the second offense by double the amount, in the discretion of the court; such fines to be paid to the officer whose duty it is to enforce the provisions of this act, to be used by him for that purpose, and to be accounted for to the Comptroller."

Section 6 provides: " The director of the New York State Agri-

cultural Experiment Station at Geneva is charged with the enforcement of the provisions of this act, and shall prosecute in the name of the People for violations thereof ; and for that purpose he may employ agents, counsel, chemists and experts, and the Court of Special Sessions shall have concurrent jurisdiction to hear and determine charges for violating the provisions of this act committed in their respective counties, subject to the power of removal provided in chapter one of title six of the Code of Criminal Procedure." The Code of Criminal Procedure provides that an indictment must contain " a plain and concise statement of the act constituting the crime, without unnecessary repetition " (§ 275), and that the name of the crime be inserted, if it have one, or if it be a misdemeanor, having no general name, a brief description of it, as given by statute, stated, and the act charged as an offense set forth. (§ 276.) The appellant contends that these provisions of the statute were not complied with, and, hence, that his demurrer should have been sustained. If the indictment does not conform substantially to the requirements of sections 275 and 276, it is a ground of demurrer under section 323 of the Code of Criminal Procedure.

The particular grounds upon which the appellant rests his contention, that the indictment does not contain a plain and concise statement of the act constituting the crime, are : (1) That it is not alleged that there was not printed on or attached to the packages of fertilizer offered for sale to be used in this State, an analysis of the nitrogen or its equivalent of ammonia, of soluble and available phosphoric acid, and of the potash soluble in distilled water, as required by section 1 of the statute. (2) That it did not allege the name of the person to whom the goods were offered for sale, if known ; and, if not, the fact that such person was unknown. (3) That it is not alleged therein that nitrogen or its equivalent of ammonia, of soluble or available phosphoric acid and potash, soluble in distilled water, were a part or parcel of such fertilizers, or of some element which entered into their composition. (4) That it is not alleged that methods (stating them) have been agreed upon by the American Society of Agricultural Chemists for the determination of the solubility of available phosphoric acid.

An examination of the indictment renders it quite obvious that it was found and drawn upon the theory that the statute of 1890

made it a crime to affix a false certificate to any package of commercial fertilizer sold or offered for sale. By chapter 222 of the Laws of 1878 it was provided that, " For affixing a false certificate to any barrel, sack, box or package of fertilizer, the party disposing of such barrel, sack, box or package, shall forfeit to the purchaser thereof the sum of two hundred dollars." That statute was repealed by section 10, chapter 437, Laws of 1890. When we look at the statute of 1890 we find that it contains no provision whatsoever making such an act a crime, or directly forbidding it. The only reference in the statute to a false certificate is contained in section 3, which provides that where the deficiency is not more than one-third of one per centum of nitrogen or its equivalent of ammonia, or one-half of one per centum of soluble or available phosphoric acid, and one-half of one per centum of potash soluble in distilled water, such statement shall not be deemed false within the meaning of this act. This provision cannot, we think, be regarded as sufficient to make it a crime to affix a false certificate to a package of such fertilizer. The statute contains no words prohibiting the making of a false certificate, but only provides that when the deficit is but a certain per centum, the certificate shall not be regarded as false. Doubtless a false certificate would, under this statute, be regarded as no certificate, but if the deficiency was no greater than that mentioned, it would, under the statute, still be sufficient, and the penalty for selling without a certificate would not be incurred. Purely statutory offenses cannot be established by implication. (*People* v. *Phyfe*, 136 N. Y. 554.) It follows, therefore, that as there is no express provision in the statute declaring the making of a false certificate to be a crime, and as no crime is to·be implied from the provisions of section 3, the allegations in the indictment as to a false certificate are insufficient to charge the defendant with a crime.

We find in the indictment no direct allegation that the required certificate was not printed on or attached to the packages of fertilizer alleged to have been offered for sale. It is alleged that a false certificate was attached, but nowhere is it alleged that a true one was not also attached. The offense created by this statute is that of omitting to attach the certificate required. This omission was the principal fact and could not, we think, be inferred from the allegation that there was a false certificate. In *The People* v. *Albow* (140

N. Y. 130, 134) ANDREWS, Ch. J., in discussing the sufficiency of the indictment in that case, said : "A criminal charge may be and often is supported by inferences from facts which imply the existence of the principal fact constituting the offense. But the principal fact must be charged in the indictment. It is not sufficient to allege the facts from which an inference of the principal fact may be drawn, without charging the principal fact. The settled rule of criminal pleadings requires that all the elements which enter into the definition of an offense must be stated in the indictment. The strictness which formerly prevailed in respect to unessential matters in indictments, which often defeated the ends of justice, has been properly relaxed. But the rule that the offense must be charged in plain and intelligible language, and that the indictment must set forth all the essential elements of the crime, is and ought to be preserved alike for the protection of the accused and in the interest of the certain and orderly administration of the criminal law. It was said by Mr. Justice FIELD, in *United States* v. *Hess* (124 U. S. 483), in the case of an indictment under a statute of the United States for a fraudulent use of the mails, where essential facts were not averred, ' no essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment or implication, and the charge must be made directly and not inferentially, or by way of recital.' This is a sound exposition of the principle governing criminal pleadings." We think the doctrine of this case requires us to hold that the indictment in the case at bar was insufficient because it did not directly charge the principal fact, which was, that the defendant offered for sale packages of fertilizer to which he had omitted to attach the certificate required by the statute.

The indictment also fails to allege the name of the person to whom the goods were offered for sale, or that his name was unknown. The recognized and well-established rules of criminal pleading required an allegation of the name of the person to whom such offer was made, if known ; if not, an allegation that they were offered to a person whose name was unknown. In *People* v. *Burns* (53 Hun, 274), where there was an indictment for selling and exposing for sale impure milk, it was held that it was essential to the validity of such an indictment that it should allege to whom the

milk was sold by the defendant, or, if the purchaser was unknown, that fact should be alleged in the indictment. In the opinion in that case it is said: " The act sought to be charged was the sale of milk of a kind prohibited by said statute. To constitute such sale there must have been a purchaser, and the defendant was entitled to be informed by the indictment who such purchaser was, so that he could be prepared to disprove such sale upon the trial, if it had not been made as alleged. The omission of such statement in the indictment constituted a material defect, as without it the defendant would be liable to surprise upon the trial, and quite likely to be prejudiced by such omission. The defect, therefore, must be regarded as matter of substance, and not merely of form, as it was the right of the defendant to be informed not merely of the crime charged, but also of the act which constituted it." (See, also, *People* v. *Gregg*, 59 Hun, 107; *People* v. *Olmsted*, 74 id. 323; *People* v. *Pillion*, 78 id. 74; *People* v. *Dumar*, 106 N. Y. 502, 509; *People* v. *Stark*, 136 id. 538.) In the *Stark* case, which was an indictment for libel, it was held that where an indictment contained no averment as to the manner of publication, or of the person or persons to whom it was addressed, or by whom it was seen or read, or that the names of such persons were unknown to the grand jury, the indictment was defective and a conviction under it error. In the opinion in that case it was said: " Tested even by the liberal rule of the Criminal Code, I do not think such an indictment contains a plain and concise statement of the act constituting the crime. So far as the manner of publication is concerned, it does not allege any fact, but a mere conclusion of law. It was held by this court, in *People* v. *Dumar* (106 N. Y. 502), that the indictment must both charge the crime and state the act constituting it, and the principal reason for requiring a specific statement of the act is the right which the accused has to be informed of the precise accusation which he is required to defend." The doctrine of the cases cited seems to be conclusive upon this question and to uphold the defendant's contention that the indictment was defective in not stating the name of the person or persons to whom the packages of fertilizers were offered for sale, or, if their names were not known, in not alleging that fact.

As the judgment herein must be reversed for the errors already pointed out, it is unnecessary to examine the other questions presented by the appellant.

Hardin, P. J., and Merwin, J., concurred.

Judgment of conviction and interlocutory judgment disallowing the defendant's demurrer reversed, and after such judgment of reversal is entered in the judgment book, a certified copy of such entry shall be forthwith remitted to the clerk of Tompkins county, with whom the original judgment roll is filed in accordance with the provisions of section 547 of the Code of Criminal Procedure.