In the Matter of WILLIAM BELL, Petitioner, against BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.

Third Department, June 29, 1945.

*Lloyd Paul Stryker* (*Harold Shapero* and *Saul Sperling* of counsel), for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Solicitor-General; Wendell P. Brown, First Assistant Attorney-General* and *Henry S. Manley, Assistant Attorney-General* of counsel), for respondent.

BREWSTER, J. Petitioner was duly licensed to practice dentistry in this State about twenty-six years ago. It has been charged against him, and the Dental Board whose findings have been approved by respondent, has found, (a) that from April, 1939, to about the end of October, 1942, he employed one Anderson, a layman, for the "primary purpose" of obtaining for him "patients * * * for dental treatment" and that he paid Anderson "commissions" on the fees collected from such patients; (b) that since about 1926 such conduct has been stated to be "unethical" in codes of ethics promulgated by the American Dental Association, the Dental Society of New York and the First District Dental Society which is the recognized subordinate of the latter body in the county of New York where petitioner maintained his practice; that petitioner was at no time a member of any of these bodies, and (c) that the respondent Board of Regents "did not prior to or during the period * * *, i.e., 1939–1942, prescribe any canon or adopt any regulation banning the conduct alleged in the petition as unprofessional conduct, and further, that said Board of Regents did not and has not adopted any regulation declaring that such alleged conduct shall be ground for discipline under Section 1311 of the Education Law." Petitioner's offense as charged and found to merit the suspension of his license, has been determined as "unprofessional conduct." Subdivision 2 of section 1311 of the Education Law, prescribes the "cases" in which disciplinary action is authorized. The first seven, there

defined by concepts quite specific, are followed by the last one which is as follows: " (h) that the dentist has been otherwise or in any other way guilty of unprofessional conduct." Since all or most of the preceding cases have to do with forms of obvious professional misconduct, the omnibus character and indefinite generality of the scope of the latter is emphasized.

The determination that petitioner's conduct as charged and proven was professional misconduct, has been found to rest upon its having been denominated unethical in the codes of above-named dental societies. It has no other basis in the record or in law. Codified ideas of unethical conduct held by certain privately organized groups within the profession have been used to particularize the generality of the omnibus term, and to constitute a cause for disciplinary penalty, " after the fact."

Privately held notions as to the ethics of what petitioner did might well be various. The patients procured by the layman for petitioner's services were seafaring men, temporarily lodged at the water front or on board their ships in dock. In need of dental services, Scandinavian in race and language, their knowledge of surroundings and their preoccupations and general plight all were such, that their needed care and welfare would, it is easily inferable from the evidence, have been unattended to save for the activities of Anderson, the so-called " runner." He, a Scandinavian ex-sailor himself, sought them out and persuaded and conveyed them to a haven of cure. Presumably this was greatly in aid of their comfort and health and as well in the interests of the masters of their ships whose agents, in referring the cases of seamen to petitioner, seem to have initiated a practice which developed the conduct condemned. That Anderson should have been recompensed for his time, service and expense would seem to raise no question of ethics. But that the petitioner should have done so from the fees of his service to these sufferers is the offense for which he has been penalized. There certainly was naught that was *malum in se* about it and, in such a case whether the act was professional misconduct would depend upon varying concepts as the meaning is interpreted from time to time and from man to man.

The phrase " otherwise or in any other way guilty of unprofessional conduct," under which the penalty in question was imposed, is otherwise undefined by the statute or any rule or regulation made by any lawful supervising authority. The phrase itself establishes no standard by which the best disposed

practitioner could avoid the pitfalls of possible violation and prosecution. The statute is penal in nature and what has been said regarding the definition of statutory offenses seems apt: " The citizen is entitled to an unequivocal warning before conduct on his part, which is not *malum in se,* can be made the occasion of a deprivation of his liberty or property." (*People* v. *Phyfe,* 136 N. Y. 554, 559; see, also, *People* v. *Grogan,* 260 N. Y. 138.) The argument that the codes of ethics of dental societies were sufficient to put him on his guard and erect the standard for his conduct contains the fallacy that the Legislature has not delegated its power of further permissible specification to the respondent alone. The latter may not, in effect, surrender that power to unofficial bodies by using their codes in default of an exercise of its own power to erect and prescribe canons or regulations which will serve " to apprise all practitioners of the standards which [it] the official body authorized to supervise the profession deems necessary," and to the end that " those who choose to disregard the warning do so at their peril." (*Matter of Cherry* v. *Board of Regents,* 289 N. Y. 148, 159.) In the latter case it was written, at page 158, that " Every member of the profession should be regarded as an expert " for the purpose of determining the "consensus " as to the necessity and propriety of standards of conduct, viz: " ethics "; and, at page 159, that " The Legislature has * * * delegated to the Board power by rule to specify and define conduct which by consensus of expert opinion in the profession is unethical and does not conform to standards which are necessary, and power to decree that such reprehensible conduct should not go unwhipt of justice. Through the exercise of that power it can adequately supervise the practice of dentistry and ban conduct dictated by ' vulgar commercialism.' " In the case at bar not only did the respondent Board fail to exercise its delegated power to " specify and define conduct which by consensus of expert opinion * * * is unethical " but, it is to be noted, there has been no finding that petitioner's conduct departed from the standard erected by the consensus of expert opinion. The respondent has not found and stated the consensus. Instead, its finding is only that his conduct did not conform to a standard erected by privately organized groups within a profession wherein every member is an expert as to what the standard should be. In the *Cherry* case (*supra*), where the disciplinary action was annulled, the standard found to have been departed from had been erected by the Board, but it was held to have been beyond its delegated power as regards

the proof there relied on. There the gravamen of conduct charged had to do with advertising, not fee-splitting or the payment of commissions, and until the lawful supervisory official body determines that the consensus is against the latter conduct, it may not condemn and adjudge it to be unprofessional conduct.

The determination of the Board of Regents and the order of the Commissioner of Education under review should be annulled.

All concur.

Determination and order annulled, with $50 costs and disbursements.