THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* SAV-4-ON GALLON, INC., et al., Defendants.

City Magistrate's Court of New York, Borough of Queens, Municipal Term Court, October 19, 1953.

*Denis M. Hurley, Corporation Counsel (James F. Hurley* of counsel), for plaintiff.

*Joseph Radest* for defendants.

J. IRWIN SHAPIRO, M. The complaint in this case charges the defendant corporation and the individual defendant, an officer thereof, with violating the provisions of section B36–103.0 and section B36–104.0 of the Administrative Code of the City of New York in a complaint reading as follows: " Said corporation is the owner, and said individual officer the operator, of a gasoline retail station at the above address whereat they have erected, posted, maintain and display three signs and/or placards which refer and relate directly and indirectly to the price of gasoline disposed at said station of the following sizes, —

1) 20 feet x 2 feet
2) 10 feet x 4 feet
3) 10 feet x 4 feet.

" Section B36–103 prohibits signs larger than twelve inches in width.

" Further, that the defendants sell or offer for sale gasoline at retail in a manner to deceive or tend to deceive a purchaser as to the price thereof in violation of Section B36–104, by means of the erection of such signs and the adoption of such corporate name."

The People's sole witness was an inspector from the department of weights and measures, who testified that on July 23, 1953, he drove into the gasoline service station of the defendant corporation, located in the county of Queens, made a purchase of five gallons of gasoline, received a discount of four cents on

each gallon, and paid and received a receipt therefor; that he thereafter made himself known as an inspector, checked the pumps and measures and found everything in order.

The witness further testified that over the office and service station portion of said premises there was a sign posted, which read " Sav-4-on Gallon " and that two large signs bearing the same inscription were attached to the sides of a truck standing in a lot immediately adjacent to the gasoline station. The inspector stated that the words " owned and operated by " appeared on each of said three signs in front of, or above, the words " Sav-4-on Gallon " and that after, or underneath the word " Gallon " on each sign, the word " Inc." appeared.

An inspection of one of the photographs of the signs in question, which were received in evidence, shows a long, narrow sign erected upon the roof of the premises, on which the words " Sav-4-On Gallon " appear in large letters, and on which the other words appear in much smaller dimensions. The other two photographs of the signs on each side of the truck show the words " Sav-4-On Gallon " standing out very prominently in contrast with the much smaller letters, " owned and operated by " and the almost indecipherable small letters of the word " Inc."

The record makes it clear that the defendant Sav-4-On Gallon, Inc., is a domestic corporation, a certificate of incorporation for which, under that name, was issued by the Department of State of the State of New York on April 27, 1953, and that since that time the corporate defendant has been engaged in business at the address in question under its corporate name. It was further testified that the motor vehicle in question, bearing the signs on both sides, was owned by the corporate defendant.

At the end of the whole case, it was clear that the defendants did not sell, or offer for sale, gasoline at retail in a manner to deceive, or tend to deceive, a purchaser as to the price thereof, by means of the erection of the signs above mentioned, or by the adoption of its corporate name, for it was conclusively established that the corporate defendant did in fact allow each purchaser a discount of four cents a gallon on gasoline.

Under the circumstances, the court, at the end of the whole case, dismissed that portion of the complaint alleging the erection of a sign, or the adoption of a corporate name, with intent to deceive, as specified in section B36–104.0 of the Administrative Code of the City of New York.

That brings us directly to the question as to whether the three signs in question violate section B36–103.0 of the Adminis-

trative Code which, after providing for the erection of certain signs on the gasoline dispensing instruments themselves, reads as follows: " no sign or placard stating or *referring directly or indirectly to the price or prices of gasoline* other than such signs or placards as hereinabove provided shall be posted or maintained *on, at, near or about the premises* on which said gasoline is sold or offered for sale." (Italics supplied.)

In *People* v. *Pearl* (173 Misc. 467 [1940]) the Appellate Part of the Court of Special Sessions, in the city of New York, reversed a conviction under this section because the signs in that case were not directly *on* the premises, but were maintained adjacent thereto. Shortly thereafter and presumably as a result of that determination, the section which then merely had a provision for prosecution if the signs were maintained " *on the premises* on which said gasoline is sold or offered for sale " was amended on July 15, 1941, by Local Laws, 1941, No. 56 of City of New York to read " *on, at, near or about the premises* on which said gasoline is sold or offered for sale ". (Italics supplied.)

It is obvious that the three signs in question refer " *directly or indirectly* to the price or prices of gasoline " and, in fact, the corporate defendant itself so interpreted the signs when it gave the inspector a four-cent discount on each gallon of gasoline purchased by him.

However, the defendant, in an effort to avoid the effect of the Administrative Code section in question raised two contentions, namely, that it is a corporation duly organized and existing under and by virtue of the laws of the State of New York and duly authorized and empowered to conduct and operate, amongst other things, a gasoline filling station in the State of New York under the said corporate name, and that failure on its part to display its corporate name prominently would be a violation of section 440-a of the Penal Law.

This court is not impressed by either contention. When the Department of State issued a certificate of incorporation to the corporate defendant, it merely authorized the use of the name in question for the purpose enumerated in the certificate *in a legal fashion and as permitted by existing law,* whether such existing law be statutes of the State of New York, or Codes of the City of New York, or codes of any other town, village, or municipality where the corporate defendant might engage in its corporate enterprises. The Department of State did not purport or pretend, by issuing a certificate of incorporation to the corporate defendant under the name in question, to authorize

it to violate any existing laws. The department had a right to assume that the corporate defendant would do business under its corporate name as, and only as, permitted by law. That seems to me to dispose of the first contention.

The second contention raised is the issue of section 440-a of the Penal Law, which reads as follows: " Every person, partnership, association or corporation owning or conducting any shop, store or other establishment wherein the sale of merchandise at retail or wholesale is carried on or transacted as a business shall cause the true, full name, including the full first name or legally registered trade name or names of the proprietor or owner or proprietors or owners of such shop, store or other establishment to be publicly revealed and prominently and legibly displayed in the English language either upon a window of such shop, store or other establishment or upon a sign conspicuously placed upon the exterior of the building containing the same." and further, " Failure to comply with the provisions of this section shall constitute a misdemeanor."

True it is that under the terms of section 440-a of the Penal Law the corporate defendant was duty-bound to publicly reveal and prominently and legibly display in the English language either upon a window of such shop, store, or other establishment, or upon a sign conspicuously placed upon the exterior of the building containing the same the true name " of the proprietor, owner, or proprietors or owners of such shop," but the corporate defendant cannot, by the ruse of adopting a name which is especially to its liking, invoke the beneficent provisions of section 440-a of the Penal Law to reason that it may thereby with impunity violate another provision of law, to wit, the Administrative Code in question.

No one compelled the corporate defendant, or those who incorporated it, to adopt a name which, upon being prominently displayed by reason of the provisions of section 440-a of the Penal Law, would do violence to, and be in violation of, another existing law or statute. It could have adopted many other corporate names, the use of which, and the display of which, in accordance with the provisions of section 440-a of the Penal Law, would not violate the provisions of section B36–103.0 of the Administrative Code of the City of New York.

Another answer to the defendant's contention that a ruling such as that here made nullifies its corporate title and its use thereof and the action of the Department of State, in issuing it, may be answered by stating that it is not prohibited from using its name, or complying with section 440-a of the Penal

Law of the State of New York, except in the city of New York, where the Administrative Code in question is in effect, or such other place or places elsewhere in the State that have the same, or similar laws or ordinances.

Apparently the city fathers believe that the provisions contained in the Administrative Code sections in question are beneficent and useful, for otherwise they would not have adopted the same originally and would not have amended the same to get around the limitation pointed out in *People* v. *Pearl* (*supra*). This court has nothing to do with the wisdom or lack of wisdom of this law. It must take it as it is written regardless of any feelings on the subject that it may have.

Under the circumstances, this court has no alternative but to find the corporate defendant guilty. It is directed to appear for sentence before this court on the 27th day of October, 1953.

The complaint as to the individual defendant is dismissed.