Walter R. Hart, J.
The local law (Administrative Code of City of New York, § B36-103.0) for the alleged violation of which the defendant was convicted in the court below provides: (a) that it shall be unlawful to sell or offer to sell at retail any gasoline unless the seller keeps continuously posted on the individual pumps signs not less than 7 inches in height and 8 inches in width nor larger than 12 inches in height and 12 inches in width clearly indicating the selling price per gallon, together with the name or trade-mark and grade or quality classification of the gasoline, and “ c. No sign or placard stating or referring directly or indirectly to the price or prices of gasoline other than such signs or placards as hereinabove provided shall be posted or maintained on, at, near or about the premises on which said gasoline is sold or offered for sale.” (Emphasis supplied.)
The conviction was bottomed on the testimony of an inspector of the Department of Markets that on October 8, 1962 he purchased a dollar’s worth of high-test gasoline from defendant at his gas station at the posted price and in addition received 10 8 & H Green Stamps, a collector’s book and a catalogue for redemption in merchandise which sets forth the amount of books required for specific articles. Each trading stamp, in addition to the legend “ 8 &H Green Stamps,” bore the notation “ Value 1 mill.” (Actually, the value of the stamp is greater since, as brought out on defendant’s case, a book of 1,200 stamps has an “ average ” value of $3.) In addition, the inspector observed on the premises five signs of various sizes, some of which were 2 feet by 2 feet, and one 3 feet by 2 feet, all of which bore the legend “ 8 & H Green Stamps ’ ’.
The decision in the court below was predicated on a finding that the signs referred ‘1 directly or indirectly to the price charged.” Defendant on appeal urges that this determination is based on an invalid and strained construction of the provisions of the Administrative Code which was not within the intent of the legislative body which enacted it.
In construing the statute, the court must be guided by certain canons of interpretation to arrive at the legislative intent which is the primary consideration (Gilmore v. City of Utica, 121 N. Y. 561, 568; Hudson Iron Co. v. Alger, 54 N. Y. 173,175). In determining the legislative intent, we must be guided by certain precepts. The first is to ascertain the purpose for which the statute was enacted. As stated by Chancellor Kent : the legislative intent with which the statutes are enacted “is to be col *77 lected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and the remedy in view.” (1 Kent’s Comm., p. 462.) Courts “ do not merely read the bare end product of the legislative labors ”, but instead “ read the .statute in the light of the state of facts which were found by the Legislature, and which prompted the enactment.” (St. Nicholas Cathedral v. Kedroff, 302 N. Y. 1, 31.) “ Statutes, directed against known and stated evils, are not to be stretched to cover situations having no real or reasonable relation to those evils ” (Metropolitan Life Ins. Co. v. Durkin, 301 N. Y. 376, 381).
A resort to the legislative history preceding enactment sheds light on the purpose of the City Council in enacting the subject provision of the Administrative Code. The bill as originally enacted in 1939 provided, inter alla (§ B36-108.0): “ (b) It shall be unlawful to sell or offer for sale at retail any petroleum products at a price or prices other than the selling price or prices per unit of sale as posted in accordance with the provisions of sub- or in any other manner.” (Emphasis supplied.) This bill was division a hereof, or to gwe or allow or offer to give or allow, in connection with such sale or offer for sale, any article of value or any concession whatsoever, whether in the form of rebate, premium, combination offer, discount, lottery or game of chance, vetoed by Mayor La Guardia in March, 1939, primarily for the reason that it “ might well be used as a vehicle for price fixing in retail sales * * *. I do not believe that even indirectly it is proper for any agency of municipal government to bring about the regulation of prices ”.
Thereafter, on August 10, 1939, a new bill was transmitted to the Mayor and approved by him. The provision prescribing the giving of allowances or rebates or any article of value was eliminated and as enacted the Local Law simply required the posting of prices on signs of specified sizes on the pumps (§ B36-101.0) and provided (b) that no sign stating the price or prices of gasoline other than as hereinabove provided shall be maintained on the premises on which the said gasoline is sold or offered for sale. The purpose of the legislation was clearly to prevent a fraud on the consuming public by confusing and misleading signs. It was on this basis that the constitutionality of the law was upheld in People v. Arlen Serv. Stations (284 N. Y. 340, 343), the court stating that it found the law valid since it “ was designed to prevent fraud ” and that “ [a] business, however honest in itself, may be the subject of governmental regulation if it may become a medium of fraud.” (Emphasis supplied.) The court concluded that the legislative body of the city properly exercised its police power to prevent *78 fraud by misleading signs. The holding was not premised on the right to regulate competition or fix prices.
As pointed out in People v. Sav-4-0n Gallon (204 Misc. 708, 711), the 1939 enactment was found inadequate to cope with the situation disclosed by the facts in People v. Pearl (173 Misc. 467 [App. Part of Ct. of Spec. Sess., 1940]) wherein the court reversed the conviction because the signs in that case were not on the premises but were maintained on an adjacent fence. Subsequent to the holding in Pearl, and on June 17, 1941, the Committee on General Welfare of the City Council reported on amendments contained in a proposed bill which had been referred to it and recommended its adoption, stating 11 That the original law enacted to correct certain evils in this business met with general public approval. Unfortunately, however, unscrupulous dealers thereafter adopted devious means to circumvent the provisions. This bill will further protect and clarify the situation, and we recommend its enactment into law. ’ ’ Accordingly, the new Local Law, as adopted and approved in 1941 and which is the provision of the Administrative Code involved on this appeal, provided that no sign or placard stating or referring directly or indirectly to the price or prices of gasoline (other than those of the limited size required to be posted on the pumps) was to be maintained “ on, at, near or about the premises ” on which gasoline is sold or offered for sale. Clearly, this does not reflect an intention to enact a provision which may be equated with the provision contained in the first bill vetoed by the Mayor so as to proscribe the offer to give or allow discounts, premiums or anything of value. As stated in People v. Fromer (231 N. Y. S. 2d 581, 582): “ When the statute was amended in 1941 to include signs ‘ referring directly or indirectly to ’ the price of gasoline, the purpose of the amendment was to prevent every kind of fraud and deception.” In our opinion there was no intention on the part of the City Council to fix prices or prohibit signs relating to the giving of premiums or bonuses.
Another canon of statutory interpretation which sustains this conclusion is that a penal statute must be strictly construed. The People, however, urge that this precept is not applicable by reason of the general provisions of section 982-2.0 (now § 1151-2.0) of the Administrative Code entitled “ Construction ’ ’ which provides that ‘ ‘ This act shall be construed liberally”. This provision may be compared with the more comprehensive ‘1 General Provisions ” of section 21 of the Penal Law, which reads': “ The rule that a penal statute is to be strictly construed does not apply to this chapter or any of the provisions thereof, but all such provisions must be construed *79 according to the fair import of their terms, to promote justice and effect the objects of the law.” (Emphasis supplied.) In commenting on section 21 of the Penal Law, section 271 of Statutes (McKinney’s Cons. Laws of N. Y., Book 1, pp. 321-327) states:
“ General rule requires strict construction
“As a general rule, penal statutes are strictly construed against the party seeking their enforcement and in favor of the person being proceeded against. It has been said, moreover, that this rule applies to the Penal Law, although section 21 thereof expressly provides the contrary. In any event it is well settled that the law does not favor constructive offenses or arbitrary punishments, and penalties cannot be raised by implication. Hence the words penal statutes are to be given their commonly accepted meaning in order to apprise the wrongdoer of exactly what is forbidden and they cannot be extended to cases not clearly within their terms. Similarly, acts which are not likely to strike the ordinary mind as morally wrong, if made misdemeanors by positive law, should be clearly described and as clearly forbidden; otherwise the statute becomes a mere trap to catch the unwary. If there is a reasonable doubt whether a penal statute applies to a particular case, the party of whom the penalty is claimed shall have the benefit of it. * * * Penal laws are to be construed in light of the common law, and a statute which makes a crime that which was not recognized at common law as a criminal offense, is particularly restrained in its application to cases clearly within its meaning and language. ’ ’
The statement in Statutes (supra) is buttressed by the language in a host of cases. Illustrative is the language in the opinion in People v. Morton (204 Misc. 1063, 1065 mod. on other grounds 284 App. Div. 413, affd. 308 N. Y. 96) where the court said: “ In the case of People v. Shakun (251 N. Y. 107) the court, at pages 113-114, said: ‘ It is well settled that a criminal statute should narrowly be construed; that acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. (People v. Phyfe, 136 N. Y. 554; Burks v. Bosso, 180 N. Y. 341.) In People v. Phyfe the court said: “ The citizen is entitled to an unequivocal warning before conduct on his part, which is not malum in se, can be made the occasion of a deprivation of his liberty or property.” ’ (Italics supplied), and again, in the case of People v. Bene (288 N. Y. 318), the court, at page 323, said: ‘ Statutes which are penal in character must be narrowly and *80 strictly construed and in manner not to embrace cases which do not clearly fall within their terms (People v. Briggs, 193 N. Y. 457; Dieterich v. Fargo, 194 N. Y. 359; People v. Wallace é Go., 282 N. Y. 417). “ Acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal ” (People v. Shakun, 251 N. Y. 107,113).’ ”
In People v. Port (53 N. Y. S. 2d 345, 348-349) the court wrote: “ 1 A penal statute should use language which is clear so that all who read it may know what act is forbidden. * * * The Legislature may in proper case make an act criminal which but for the statute would have been lawful; the courts may not by forced construction create a crime.’ People v. Stoll, 242 N. Y. 453, at page 463,152 N. E. 259 at page 262.”
In People v. Dioguardi (8 A D 2d 426, 434, revd. on other grounds 8 N Y 2d;260) the opinion of the court states: “ In construing penal statutes ‘ according to the fair import of their terms ’, as we are directed to do by the Penal Law (§ 21), we may not extend their scope so that acts, otherwise innocent and lawful, become crimes, unless there is a clear and positive expression of legislative intent to make them criminal (People v. Shakun, 251 N. Y. 107; People v. Phyfe, 136 N. Y. 554; People v. Adamkiewicz, 298 N. Y. 176,179; see, also, People v. Fein, 292 N. Y. 10, 14; Hornstein v. Paramount Pictures, 292 N. Y. 468, 471). Nor should a penal statute admit of such a double meaning that a citizen may act upon one conception of its requirements and the courts upon another (People v. Brill, 255 App. Div. 452, 454; United States v. Capital Traction Co., 34 App. Cas. [D. C.] 592).” !
And in People v. McManus (187 Misc. 609, 615) the court said: “ ‘ The intent of the legislature to elevate an act to the importance of a crime, cannot be imputed by loose inferences, and doubtful implications, but must be made to appear with reasonable certainty. We may guess that the legislature intended to make all prohibited acts, criminal offences, but it is impossible to so affirm with any degree of certainty, and the fact that they did not so declare, is indicative that they did not so intend. ’ (People v. Hislop, 77 N. Y. 331, 335.) Laws which create crimes ought to be so explicit either in themselves or by reference to some other standárd that all men subject to their penalties may know what acts it;is their duty to avoid (Sherwin v. People, 100 N. Y. 351). A criminal statute should be construed narrowly that acts, otherwise innocent and lawful, do not become crimes unless there is a clear and positive expression of the legislative intent to make them criminal (People v. Shakun, 251 N. Y. 107).”
*81 In People v. Adamkiewicz (298 N. Y. 176, 179), the court stated: “Acts otherwise innocent and lawful do not become criminal unless there is clear and positive expression of legislative intent to make them criminal (People v. Benc, 288 N. Y. 318; People v. Shakun, 251 N. Y. 107; People v. O’Gorman, 274 N. Y. 284).”
It is to be observed that in the cited case of People v. Benc (288 N. Y. 318, 323), the Court of Appeals reversed the conviction for a violation of the Administrative Code which prohibited the maintenance of a laundry without a license. Defendant, the owner of a 64-family apartment house, installed a coin-operated washing machine for the use of tenants. The Court of Appeals, despite the provisions of section 982-2.0 of the Administrative Code, reversed a judgment of conviction, stating: “Statutes which are penal in character must be narrowly and strictly construed and in a manner not to embrace cases which do not clearly fall within their terms * * *. ‘ Acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal ’? (See, also, People v. Wood, 8 N Y 2d 48, 51; People v. Teal, 196 N. Y. 372, 378, revg. 133 App. Div. 35; People v. Phelps, 133 N. Y. 267; People ex rel. Collins v. McLaughlin, 60 Misc. 306, affd. 128 App. Div. 599; People v. Fleishman, 133 Misc. 288.)
The interpretation of the statute made by the trial court and urged here by the People is, we conclude, a strained construction, one which courts traditionally and consistently condemn (People v. Feliciano, 10 Misc 2d 836, 839^840).
The critical terms in the Administrative Code provision under which defendant was convicted and which require interpretation are the words “indirectly” and “price”. These are to be interpreted not as words of art but as words that would be comprehended by the average man on the street so that he would know whether he violated a statute for which he would be punished. The term “ indirectly ” signifies the doing by an obscure, circuitous method something which is prohibited from being done directly, and includes all methods of doing the thing prohibited except the direct one (Amicable Life Ins. Co. v. O’Reilly, 97 S. W. 2d 246, 249 [Texas Civ. App.]; State v. Pielsticker, 118 Neb. 419, 423). The word “ price ”, as used in the text of the Administrative Code, is a monetary equivalent in dollars and cents which the customer must pay for each gallon of gasoline or, as phrased, in Sun Oil Co. v. Director of Division on Necessaries of Life (340 Mass. 235, 237), “ The 1 price of motor fuel ’ is the number of currency units for which a unit of fuel is sold.” In Theberge v. Canadian Pacific Ry. Co. (119 Vt. 193, 201), the *82 court said: ‘ ‘ Price has been defined as the consideration in money for the purchase of a thing. Bouvier’s Law Dictionary.” And in Bowman v. Armour & Co. (17 111. 2d 43, 52) the word 11 price ’ ’ was defined as follows: “ It is a well established rule that in the absence of contrary statutory definition, words used in a statute are used in their popularly understood meaning. (Farrand Coal Co. v. Halpin, 10 111. 2d 507.) The word ‘ price ’ has a narrower meaning and is more restricted in scope than the word ‘ consideration, ’ and ‘ price ’ has been defined as the amount of money given or received in exchange for anything. (See Webster’s New International Dictionary, 2d Edition.) Theberge v. Canadian Pacific Railway Co., 119 Vt. 193, 122 A. 2d 848.”
The trial court in our opinion erred when it stated that the sign “ S & H Green Stamps ’ ’ referred indirectly to the price charged as appears from the “ common usage of the stamps.” In arriving at its conclusion, we believe the trial court confused “ value ” with “ price.” Value and price are not the equivalent of each other. “Value” is a word more comprehensive than “ price ” (Theiss v. Weiss, 166 Pa. 9,17; Marriner v. Roper Co., 112 N. 0.164, 167). The signs in question advertising the trading stamps indicated that something of ‘ ‘ value ’ ’ was to be given on the purchase of the gasoline but did not refer directly or indirectly to the ‘ ‘ price ’ ’ within the context of the statute. The result reached here finds support in opinions in other jurisdictions. In Sperry <& Hutchinson Co. v. Margetts (15 N. J. 203), the statute required the posting of price per gallon of gasoline on the pumps and proscribed the sale of gasoline at a price below that posted and the giving of ‘ ‘ rebates, allowances, concessions or benefits * * ,* directly or indirectly ’’. (Emphasis supplied.) The court held (p. 206): “ Such use of plaintiff’s discount stamps is not within the letter of the statutory interdiction; nor would it be inimical to the reason and spirit of the act.”
In Sun Oil Co. v. Director of Division on Necessaries of Life (340 Mass. 235, supra), the statute provided for the posting of the sales price on the pumps and further provided that “ No signs stating or relating to the price of motor fuel, and no signs designed or calculated to cause the public to believe that they state or relate to the price of motor fuel, other than the signs referred to in the preceding paragraph and required to be displayed upon pumps and other dispensing devices, shall be posted or displayed on or about the premises where motor fuel is sold at retail, and within view of any public highway or reservation.” (Emphasis supplied.) Plaintiff oil company brought an action for a judgment declaring that its sign extolling the thriftiness *83 of custom blending at the pump so as to permit the delivery of one of six octane rated gases did not violate the statute. In directing judgment the court observed (p. 238): “ These signs inform customers who need gasoline of higher octane rating than standard that their expenditures for motor fuel, that is, their fuel costs, may be less than at competitive pumps which sell only a single high test fuel. Such fuel cost to the customer is what these signs, and in particular the ‘ pay duly ’ sign, refer to. This, however, is not in any precise sense the ‘ price ’ of the fuel, and we do not think that the wording or intent of the statute requires that the word 1 price ’ be so construed as to include concepts beyond its plain meaning. ‘ The words of a statute are to be given their usual and ordinary meaning. Words plain enough in common speech are equally plain when they appear in a statute. They are to be considered in the light of the obvious aim to be accomplished by the Legislature and as employed by the Legislature as expressing the practical means by which the legislative aim is to be attained. Every statute, if possible, is to be construed in accordance with sound judgment and common sense, so as to make it an effectual piece of legislation. ’ ”
In Sperry & Hutchinson Co. v. Director of Division on Necessaries of Life (307 Mass. 408), the statute required every retail dealer of motor fuel to conspicuously mark his pumps with the price of the motor fuel dispensed therefrom and regulated the size of the price signs and provided that no other price signs relating to the price of fuel be displayed on or about the premises of the dealer. There was a further provision that “ [n]o premiums, rebates, allowances, concessions, prizes or other benefits shall be given directly or indirectly by any retail dealer so as to permit any purchaser to obtain motor fuel from such retail dealer at a net price lower than the posted price applicable at the time of the sale ” (p. 414). The defendant who was charged with the duty of enforcing the statute directed the dealers affiliated with plaintiff stamp company to remove the signs which stated that on the cash payment of the posted price, each purchaser was entitled to one trading stamp for each 10 cents paid, and further directed them not to issue stamps. In directing judgment in favor of the plaintiff and holding that an attempt to forbid the use of trading stamps was violative of the Constitution, the court said (p. 421): “ Trading stamps have been in use long enough so that any purchaser of merchandise who is interested in acquiring and converting them to his advantage, cannot be said to be likely to be deceived as to their value. As appears from the agreed facts, these stamps represent certain *84 well defined and easily understood rights that the recipient acquires, and there is no reasonable cause to believe that the dealer who offers them in consideration of cash or approved credit sales will resort to fraudulent practices.”
The precedents cited by the People are not persuasive. In People v. 25 Stations (3 N Y 2d 488, 490) defendants maintained a sign measuring 5 feet in length and 3% feet in width on the pumps which read: “ Owned & Operated by 25 Stations Inc.” The numerals ‘ ‘ 25 ” were painted in red and were 36 inches in height. The words 11 Owned & Operated” appearing above the “ 25 ”, were painted in less striking black and were only 6 inches in height. The word 1‘ Stations ’ ’ appearing below the “ 25 ” was also in black and measured only 6 inches in height. The abbreviation “ Inc.” below the word “ Stations ” was even smaller. In reversing the Appellate Part of Special Sessions, which had reversed a judgment of conviction by the Magistrate, the Court of Appeals said (p. 491): “ Suffice it to say that from the photographic exhibits alone and the clear picture they give of the size, location and effect of this placard or sign, there was ample evidence upon which the Magistrate could find, as he did, that the sign indirectly referred to the price of gasoline and constituted a violation of the Administrative Code.” Patently, as the Court of Appeals indicated, the consuming public could well believe from the sign that the price of the gasoline was 250 a gallon and that the maintenance of the sign could be a “ medium of fraud ” (People v. Arlen Serv. Stations, 284 N. Y. 340, 343), the prevention of which was the purpose for which the bill was enacted. ;
In People v. Save-Way Northern Blvd. (10 N Y 2d 727), defendant’s sign displayed the word “ Save ” printed in large letters in a horizontal position and the word “ Way ” printed in vertical position. Its full corporate name of “ Save-Way Northern Boulevard, Inc.” was not used. The gasoline as such had no brand name and was purchased from an independent refinery, Hess Trading & Transportation Inc. Upon the trial of the action the Magistrate made a specific finding that the words “ Save-Way ” indirectly referred to the savings on the price and not the quantity of the gasoline. The Court of Appeals affirmed on the authority of People v. 25 Stations (Fuld, J., dissenting). Implicit in the determination is the finding by the court that the words “ Save-Way ” referred to a saving of the monetary equivalent in dollars and cents which the customer would effect in the purchase of a "unit of gasoline and this is interdicted by the statute.
*85 The case of Bristol-Myers Co. v. Picker (302 N. Y. 61), cited by respondent, is upon analysis not controlling. In that case plaintiff brought an action under the Feld-Crawford Price Fixing Statute (General Business Law, art. XXIV-A) to restrain defendant from giving upon the sale of plaintiff’s price-fixed merchandise cash register receipts which were redeemable in one of the stores of 14 other merchants in the neighborhood at the rate of 250 for each $10 worth of merchandise purchased. The Court of Appeals held that this method of retailing and of giving the bonuses violated plaintiff’s rights under the Fair Trade Statutes which had been enacted to protect the good will created by plaintiff by extensive advertising; that defendant’s plan operated to circumvent the very purpose of the statute, noting (p. 67): “ The difficulty with these views [of defendant] is that the situation here presented is not among the several excluded by the Legislature from the operation of the statute.” (Emphasis supplied.) It is to be noted, however, that that case did not deal with, as the instant case does, a criminal statute, in which case an act is not made criminal unless specifically included in the statute. As previously stated, the purpose of a statute and the intent of the Legislature is controlling. In the Bristol-Myers case the intent of the statute was to protect the good will of the manufacturers of brand merchandise and prevent the cutting of retail prices by any device. On the other hand, the provision of the Administrative Code here being considered is to prevent a fraud upon the consumer.
Nor is Brody v. Save-Way Northern Blvd. (19 A D 2d 714) in point. • There the complaint alleged that the large sign maintained by defendant in violation of the Administrative Code bore the legend: “ Save Way, Save 50 per Gal.”, which clearly refers to the price of gasoline. The majority of the court held that this was sufficient to permit a competitor to sue for unfair competition.
Respondent also stressed on the opinion of the court in American Auto. Assn. v. Spiegel (205 F. 2d 771 [C. A., 2d Cir.]). There an action was brought for an infringement of plaintiff’s trade-marlc “AAA” enclosed in an oval which was displayed without authorization by defendant at his filling station. One of the affirmative defenses interposed by him was that the affiliated members of plaintiff’s organization entered into contracts with the club agreeing to pay 10% of the net amount of the purchases made by members of the club from affiliated stations; that this was accomplished by the stations purchasing coupons from the club and delivering them to club members when they made purchases for 10% of the sales price and which *86 coupons were thereafter redeemed by the club; that in practice the affiliates (though agreeing by contract not to do so) give a 10% cash discount to nonmembers. It was contended by defendant that the maintenance of the AAA signs violated the Administrative Code. The District Court granted summary judgment, which was reversed by the Court of Appeals primarily on the ground that there was an issue of fact as to whether defendant sold or advertised any goods “ on ” which plaintiff’s trade-mark appeared and which was likely to lead purchasers to suppose that “ the source of origin ” of the goods he sold was the plaintiff’s. The court then added (p. 775): “ We do not now decide anything about the defences, except that if the court should conclude that it has jurisdiction over the action, it should not attempt to dispose of the merits summarily, but only after a trial. We think that the defences present issues that are by no means frivolous, and that may be decided only after the facts are fully developed.” In our opinion this is no holding that as a matter of law the AAA signs are violative of the Administrative Code in that they refer indirectly to the price of the gasoline but is dictum to the effect that the applicability of the statute to such signs was to be determined only after a full development of the facts.
It is our conclusion that the subject stamp signs maintained by the defendant are not and were not intended to be within the ambit of the Administrative Code.
In view of the foregoing we do not reach the constitutional issues so competently briefed by all parties, including the amici curiae appearing on each side.
The judgment should be reversed, the complaint dismissed on the law and the fine remitted.
Concur — Pette and Groat, JJ.
Judgment reversed, etc.