154 So.2d 812 (1963)
Joseph ADJMI, Charles Adjmi, Emile Halfon, and Albert George, Petitioners,
v.
The STATE of Florida, Respondent.
No. 31785.
Supreme Court of Florida.
May 29, 1963.
Rehearing Denied June 26, 1963.
*813 Sibley, Grusmark, Giblin, King & Levenson and Irving B. Levenson, Miami Beach, for petitioners.
Richard W. Ervin, Atty. Gen., and David U. Tumin, Asst. Atty. Gen., for respondent.
HOBSON, Justice (Ret.).
This case is before the Court upon a petition for certiorari directed to the District Court of Appeal, Third District. The petitioners were defendants in the Criminal Court of Record in and for Dade County, Florida, and occupied the position of appellants on appeal to the said District Court of Appeal.
The petition for certiorari is predicated upon the theory of conflict between the decision of the said District Court and several prior decisions of the Supreme Court of Florida.
It is alleged by petitioners that the information filed against them contained but a single count charging a single act of grand larceny by false pretenses. They say however that the State over the objection of petitioners' counsel was permitted "to prove at least fourteen (14) occasions separated in terms of time from each other by approximately one week on the average with two days as the shortest period and one full month as the longest when the petitioners actually received money or property belonging to and parted with by the prosecutrix." After the State had declared in its opening address to the jury that it intended to prove the aforementioned enumerated occasions when the petitioners allegedly unlawfully separated the prosecutrix from her money or property counsel for petitioners immediately moved the trial court for a compulsory election by the State as to which single act of suggested grand larceny by false pretenses it would rely upon for conviction. This motion was denied.
Consequent upon this ruling the State did in fact prove the fourteen separate transactions, two of which took place in *814 Pittsburgh, Pennsylvania, a locality far removed from the jurisdiction of any state court of Florida. Upon the conclusion of the State's case in chief, petitioners moved anew for a compulsory election by the State of a single act of grand larceny by false pretenses that would be relied on for conviction under the single count in the information. This motion was also denied. Upon the conclusion of the taking of all testimony the Court charged the jury, and submitted the case to it with the result that a general verdict of "Guilty, Grand Larceny" was returned. Upon appeal the District Court, Third District, affirmed the judgment which was entered by the trial court pursuant to the jury's verdict.
Petitioners' primary contention is that this decision is not only erroneous and contrary to established precedent but in holding that under the facts of this case as set forth on the face of the opinion of the District Court the State was not required to make a compulsory election, said Court's decision is in direct conflict on the same point of law with many of the Supreme Court's previous decisions.[1]
We deem it appropriate initially to decide this first contention of petitioners because if it is well taken this Court undoubtedly has jurisdiction to entertain the petition for certiorari. Moreover if this position is well founded and if this Court adheres to its former decisions to the effect that the so-called "single impulse theory" is not tenable our decision must be one quashing the decision of the District Court and directing that said Court enter its mandate of reversal.
Petitioners pose their main query in the following language:
"WHETHER OR NOT THE STATE MUST ELECT ONE OF NUMEROUS ACTS OF GRAND LARCENY BY FALSE PRETENSES PUT IN EVIDENCE IN A PROSECUTION FOUNDED ON AN INFORMATION WHICH CHARGES, IN A SINGLE COUNT, A SINGLE ACT OF GRAND LARCENY BY FALSE PRETENSES?"
In its brief the State says that the foregoing query presented by petitioners should be framed as follows:
"WHETHER OR NOT THE SUPREME COURT OF FLORIDA WILL REVIEW BY CERTIORARI THE DECISION OF THE DISTRICT COURT OF APPEAL RELATING TO AN ASPECT OF THE RECORD ANALOGOUS TO THE SUFFICIENCY OF THE EVIDENCE TO-WIT: THE ELECTION OF CERTAIN ACTS OF GRAND LARCENY WHICH OCCURRED OVER AN EXTENDED PERIOD PURSUANT TO A SINGLE SUSTAINED CRIMINAL IMPULSE IN EXECUTION OF A GENERAL FRAUDULENT SCHEME, WHICH DECISION REVEALS NO DIRECT OR PRIMA FACIE CONFLICT WITH ANY DECISION OF ANOTHER DISTRICT COURT OF APPEAL OR OF THE SUPREME COURT OF FLORIDA ON THE SAME POINT OF LAW."
The question submitted by the State can have but one answer if it is an appropriate query. Certainly if the decision of the District Court in this or any case "reveals no direct or prima facie conflict with any decision of another District Court of Appeal or the Supreme Court of Florida on the same point of law" the jurisdiction of this Court cannot be invoked. It is apodictic that under such asserted fact the "conflict" avenue of approach to this Court's jurisdiction is unavailable. We are convinced however that the decision of the *815 District Court herein, predicated upon the facts enucleated in its opinion, is in direct conflict on the same point of law with several of this Court's previous decisions.
In the Hamilton case, supra, the accused was charged in a single count with a single act of unlawfully receiving stolen property. At the trial the State proved, by the testimony of the prosecuting witness who was an employee of Burdine's Inc., that on three separate occasions to-wit: Before June, 1935 and during June of the same year and in October of that year the accused did with scienter receive stolen goods which the prosecuting witness had stolen from Burdines. In that case defense counsel moved the trial court to compel the State to elect upon which one of the three transactions it would rely for conviction. This motion was denied. The State placed in evidence all three transactions and the jury failed to specify in its general verdict of guilty upon which single act it found the defendant guilty.
In that case this Court stated:
"The defendant made a motion to quash the information in the court below, but of course this question could not be successfully raised thereby, because on its face the information charged only a single offense. However, the point that the court erred in refusing to make the State elect upon which articles received by the defendant the State would maintain and continue its prosecution was directly raised twice during the introduction of the State's testimony and again in the motion for new trial. It was only when the State produced its testimony that it was made to appear that the State had intended to charge several different offenses, or at least intended and endeavored to prove several distinct offenses, under the single count in the information. The error might have been cured if the court had required the State to elect which of these offenses it was relying upon. * * *"
This Court's judgment was couched in the following language: "Judgment is reversed."
The case of Green v. State, supra, involved a single count of grand larceny for the asseverated theft of seven hogs allegedly belonging to the same owner. The proof at trial disclosed the fact that two hogs came from one place and the remaining five hogs came from another. It was evident from the testimony that if the accused stole the seven hogs he necessarily did so by taking them from separate places at different times. In the Green case defense counsel moved the Court to compel the State to elect which of the two transactions it would rely upon for conviction. The motion was denied and of course the State did not elect. The jury returned a general verdict which did not designate upon which of the two transactions the defendant had been found guilty. In finding reversible error and granting an absolute discharge to the defendant the Supreme Court of Florida adopted and pronounced the rule that:
"When two distinct offenses are charged in an indictment or developed by the evidence, the district attorney should be required to elect on which of the charges he intends to claim a conviction, as soon as he has examined the witnesses far enough to identify the transaction, and in all cases the election must be made before the accused offers his testimony."
In Connor v. State, supra, this Court held that the crime of larceny by false pretenses is effected upon the receipt of, or upon obtaining, the property and we quote:
"* * * The receipt or obtaining of the property is the consummation of the offense, and in the absence of a valid qualifying statute the place of its receipt is the sole locality of jurisdiction. If the false pretenses are made in one jurisdiction, but the property is obtained in another, the prosecution must, *816 in the absence of such a statute, be instituted in the latter jurisdiction."
We digress for the moment to make the observation that had the State been required to specify, as it should have been, upon which one of the several transactions it elected to stand and had such election been one of the transactions which allegedly took place in Pittsburgh, Pennsylvania, this case would have been dismissed  pronto  for lack of jurisdiction in the Criminal Court of Record in and for Dade County, Florida. No one can delve into the minds of the jurors and conclude with certainty that it was not one or both of the transactions which took place in Pennsylvania upon which the jury found the petitioners by a general verdict to be "Guilty, Grand Larceny." This paradox emphasizes one of the prime factors underlying the salutary rule set forth by this Court in its decision in the case of Campbell v. State, 155 Fla. 359, 20 So.2d 127.
It is contended by the State that the District Court in its decision merely enunciated a novel principle of law when it adopted the theory of "a single impulse" in the following language:
"Here the taking of the many checks, although on different dates, as a result of the fraudulent representations of the defendants was a continuous transaction or proceeding instigated by one purpose and impulse. So the separate occasions when money was paid was prompted by one design, one purpose, one impulse and these `separate' occasions constituted a single or continuous act." TR. p. 19.
The Campbell case discloses the fact that the Supreme Court of Florida had before it for consideration the "single impulse theory." In that case this Court repudiated the "single impulse theory." It can hardly be said that the adoption of that theory by the District Court in this case is not in direct conflict on the same point of law concluded previously and adversely by the Supreme Court in Campbell v. State, supra.
In the Campbell case Mr. Chief Justice Buford speaking for the Court stated:
"`Question Two' is based on the erroneous assumption that the record shows that the two counts are based on one and the same transaction and constituted but one offense. The record shows that the first count is based upon a transaction involving a $200 check which occurred on December 15, 1942, while the second count is based upon a transaction involving $800 which occurred on December 30, 1942. It is true that both transactions resulted from one and the same general scheme and purpose, but each was not the same act as the other. Under the facts disclosed by the record, the State might have successfully prosecuted the appellant for the larceny of the $200 item referred to in count one and for the larceny of the $800 item referred to in count two, or it might have successfully prosecuted for the offense of receiving property by false pretense as to each transaction. The State chose to prosecute in one instance for larceny and in the other for obtaining property by false pretense." (Emphasis supplied.)
We direct the attention of the reader to said opinion for the reasons underlying the salutary object of the rule which is diametrically opposite to the inevitable result which would follow the adoption of the rule denominated as the "single impulse theory."
In the year 1951 this Court in the case of Hearn v. State, 55 So.2d 559, definitely decided that larceny is not a continuing offense under the law of Florida. We quote the pertinent language from page 560 of that opinion:
"* * * where property is stolen from the same owner or from different owners at different times or places or as a result of a series of acts, separated in either time, place or circumstances, one from the other each taking *817 is a separate and distinct offense * * *." (Emphasis supplied.)
See also Hall v. State, Fla., 66 So.2d 863.
The logic and reason of petitioners' position as is stated by them in their brief and which we quote with approval is unanswerable:
"The ultimate test of the correctness of the petitioners position is to reverse their position with that of the State. If the State had correctly charged the petitioners with fourteen (14) separate larcenies by a fourteen (14) count information and they had urged that they [the petitioners] had committed but one offense, the State would have relied upon the Campbell case to support their position. It is apparent that the petitioners were charged in a single count with a single act of grand larceny by false pretenses. The State put in evidence proof of fourteen (14) separate offenses of larceny by false pretenses. Upon appropriate motions to compel an election the court declined to require the State to choose which single act it would rely on for conviction. The jury verdict is general and it is impossible to ascertain and determine upon which single act that verdict rests. Under the settled law of this State the petitioners are entitled to an absolute discharge. The District Court's decision to the contrary directly conflicts with the prior cited decisions of this Court. The past decisions of this Court establish a patently correct rule of law and should be adhered to as the controlling law of this State."
Thus far we have concluded that the decision of the District Court affirming the judgment entered at the trial level is in conflict with several decisions previously rendered by the Supreme Court of Florida and that this Court therefore has jurisdiction. We have also decided that in line with our prior decisions on the same point of law the decision of the District Court must be quashed with directions to said court that it render its mandate of "reversal" to the Criminal Court of Record in and for Dade County, Florida.
We feel that it is proper nevertheless to discuss petitioners' point designated as "Point III:"
"THE CRIME OF GRAND LARCENY BY FALSE PRETENSES CANNOT BE BOTTOMED ON A MISREPRESENTATION OF THE VALUE OF MERCHANDISE."
It is the petitioners' view that there must be shown a direct causal relation between the alleged false representation and the parting with property by the prosecutrix in order to establish the crime of larceny by false pretenses.
It should be borne in mind that we have settled the question of this Court's jurisdiction. Consequently we not only have the right but we are charged with the duty of considering this case on its merits as though it had come here originally on appeal.[2]
In Ex parte Stirrup, 155 Fla. 173, 19 So.2d 712, 713, we stated:
"* * * Inasmuch as deception is the essence of the crime, there must be a causal relation between the representation or statement made and the delivery of the property."
Again, in Ladd v. State, 17 Fla. 215 (1879), this Court said:
"* * * In order to convict upon an indictment for the offense, it is necessary to allege that the party, by reason of such false pretenses, was induced to part with the ownership of his property. That is the very gist of the offense. The false representations *818 amount to nothing so far as the prosecutor is concerned, unless he has been induced to part with something valuable.
"It cannot be assumed that every alleged false statement made by the purchaser can be treated as the criminal offense for which this defendant was indicted. * * *"
After having established this Court's jurisdiction we have gone to the record to determine the representations upon which the prosecutrix relied in parting with her money or property. She stated that she relied solely on the representation of the value of certain merchandise that had been delivered to her by the petitioners and deposited in her home. We quote from the testimony of Mrs. McAlister:
"Q. Yes, Ma'am. Answer me this question: About this lace factory and that sort of thing, would you have loaned them five cents if you didn't have the ivory in your home and you didn't believe Emile Halfon as to the value of those items?
"A. No, I wouldn't, but they gave me that for security.
"Q. Yes, Ma'am. I appreciate that, and I appreciate your candid answer. So we can safely say to this jury that one of the main reasons you gave up these large sums of money, or to invest in this lingerie factory or lace factory in France to save the orphanage or to buy acreage for the orphanage and all this sort of thing 
"A. Yes.
"Q. Let me finish. It is a little lengthy, but that you would not have given them those moneys unless Emile Halfon and Joseph Adjmi had represented to you that these articles in your home were valued at one time at $600,000 and at another time at two million dollars.
"A. I would not have.
"Q. Are we absolutely right there about that, Mrs. McAlister?
"A. Yes."
In the case of Criner v. State, 92 Fla. 483, 109 So. 417, this Court stated:
"The law is well settled that in ordinary business transactions statements of value are mere expressions of opinion, and that erroneous statements of value will not support even a civil action for rescission or cancellation. Glass v. Craig, 83 Fla. 408, 91 So. 332.
"It follows that the alleged false statement as to value set forth in the information does not amount to a criminal act of false pretense. It is a matter of universal knowledge among people of common sense and experience that men's ideas of the values of items of property vary widely, and that the owners of property are inclined to overestimate its value. Prospective purchasers are required in law to take cognizance of this human frailty, and to investigate values on their own account. If they fail to do this, they have no redress at law. And to hold otherwise in a criminal case would be to open the door to a flood of petty prosecutions in all trades and walks of life. * * *"
Value is indeed a matter of opinion and the crime of larceny by false pretenses requires a misrepresentation of a past or existing fact as distinguished from mere opinion.
The petitioners' further contentions, first, that they were denied a fair and impartial trial because their request for a change of venue was not granted and, second, that they were also not accorded *819 a fair and impartial trial because the prosecuting attorney in closing argument made a comment which might be considered to have been a direct or indirect reference or an allusion by innuendo or inference to the fact that the defendants did not testify in their own behalf, need not be discussed but attention is directed to the admonition to trial judges set forth in the excellent opinion of Mr. Justice O'Connell in the case of Singer v. State, Fla. 1959, 109 So.2d 7, and the cautionary notice given to prosecuting officers in our opinions in Way v. State, Fla. 1953, 67 So.2d 321; Trafficante v. State, Fla. 1957, 92 So.2d 811; and Gordon v. State, Fla. 1958, 104 So.2d 524.
No question concerning the sufficiency of the evidence has been raised. Moreover had an attempt been made to present such a query we could not have considered it under the ruling which we have been compelled by the irrefragable logic of our prior decisions to make. It has been suggested that the evidence is sufficient to establish the guilt of the petitioners. In the face of such suggestion we are moved to observe that equal justice under law is the capstone of American jurisprudence. Every defendant in a criminal case is guaranteed by Section 11, Declaration of Rights of the FSA-Constitution a fair and impartial trial. We have previously determined that these petitioners were not accorded such a trial. As was stated by Mr. Justice Roberts in Diecidue v. State, Fla. 1961, 131 So.2d 7, 12:
"Every citizen's right to a fair and impartial trial by a jury of his peers has been jealously protected over the years by the Supreme Court of Florida. We have held this constitutional guarantee to apply not only to those constituting the upper eschelon of our economic and social life, but just as forcibly to those who might be considered among the dregs of society."
The late Mr. Justice Mathews in the opinion which he prepared for the Court in Bizzell v. State, Fla. 1954, 71 So.2d 735, 738 said:
"It is more important to preserve them [constitutional guarantees], even though at times a guilty man may go free, than it is to obtain a conviction by ignoring or violating them.[3] The end does not justify the means. Might is not always right. Under our system of constitutional government, the State should not set the example of violating fundamental rights guaranteed by the Constitution to all citizens in order to obtain a conviction."
Again in Boynton v. State, Fla. 1953, 64 So.2d 536, 552, 554, the same eminent jurist, who before his elevation to the bench was generally recognized as an authority on constitutional law, wrote:
"Every particular section of the Declaration of Rights stands on an equal footing with every other section. They recognize no distinction between citizens. Under them every citizen, the good and the bad, the just and the unjust, the rich and the poor, the saint and the sinner, the believer and the infidel, have equal rights before the law. It is just as much a violation of the Constitution to deny a person the right to worship in accordance with the dictates of his conscience, to suppress the freedom of speech or of the press, or to deny a trial by jury, as it is to violate his right to be secure in his person, house, papers and effects against unreasonable searches and seizures * * *."
We conclude that the decision of the District Court of Appeal, Third District, herein, should be quashed with the direction that its mandate be one of reversal of the judgment entered in and by the Criminal Court of Record in and for Dade *820 County, Florida, with directions to such court to grant a new trial.
It is so ordered.
TERRELL, Acting C.J., and DREW and CALDWELL, JJ., concurring.
THOMAS, THORNAL and O'CONNELL, JJ., dissenting.
NOTES
[1] Hamilton v. State, 129 Fla. 219, 176 So. 89, 112 A.L.R. 1013; Green v. State, 134 Fla. 216, 183 So. 728; Connor v. State, 29 Fla. 455, 10 So. 891; Campbell v. State, 155 Fla. 359, 20 So.2d 127; Hearn v. State, Fla., 55 So.2d 559, 28 A.L.R. 2d 1179; and Hall v. State, Fla., 66 So.2d 863.
[2] Tyus v. Apalachicola Northern Railway, Fla. 1961, 130 So.2d 580.
[3] Francois M.A. Voltaire (1694-1778) Zadig. Chap. 6, "It is better to risk saving a guilty person than to condemn an innocent one."