STATE of Missouri, Respondent,

v.

Billy HOLLINGSWORTH, Appellant.

No. WD 42557.

Missouri Court of Appeals,
Western District.

July 2, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 1, 1991.

Application to Transfer Denied
Nov. 19, 1991.

Lawrence R. Magee, Kansas City, for appellant.

William L. Webster, Atty. Gen., Christine A. Alsop, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, C.J., SHANGLER, TURNAGE, KENNEDY, BERREY, GAITAN, FENNER, ULRICH and BRECKENRIDGE, JJ., and NUGENT and WASSERSTROM, Senior Judges.

FENNER, Judge.

Appellant, Billy Hollingsworth, appeals his conviction, after trial by jury, of stealing in violation of § 570.030 RSMo 1986.[1] Hollingsworth was sentenced to one year imprisonment and fined $5,000.00.

The evidence presented at trial, viewed in the light most favorable to the conviction, showed that Hollingsworth and two other individuals, Marty Miller and Bobby Wilson, had worked together for several years in an effort to "swindle" elderly people. Marty Miller described their organization

---

1. All statutory references are to RSMo 1986, unless otherwise specifically stated.

as a fraud ring which targeted senior citizens. The three men would approach elderly people in their home offering a free termite inspection. Once in a home, they would misrepresent to the home owner that some work needed to be done on the property to try to get as much money out of the victim as possible.

On January 23, 1988, Hollingsworth, Miller and Wilson went to the home of Mary E. Throckmorton in Marshall, Missouri, because they were aware that she was elderly and lived alone. Miller testified that their intention in approaching Mrs. Throckmorton was to fraudulently obtain money from her.

The evidence showed that on January 23, 1988, Mrs. Throckmorton was an 89 year old woman, living alone, who suffered from diabetes. She had difficulty seeing, hearing, writing and moving about. In addition, her ability to think clearly when under pressure was impaired.

Without invitation, Wilson entered Mrs. Throckmorton's home announcing that he was looking for termites. Wilson went to the basement and returned showing Mrs. Throckmorton ants and told her that the three men would make a free inspection of the house.

The three men inspected the attic and found space around some vents that allowed water to leak into the attic insulation. They advised Mrs. Throckmorton that the leaks needed to be sealed and the wet insulation replaced. She told them to do the work that "needs to be done."

The men purchased insulation from a local lumber company at a cost of $105.00. They installed the insulation and sealed the space around the vents with a sealer that cost $5.00. They were at Mrs. Throckmorton's house for approximately one and one half hours.

When the men completed the work, they went into the house. Wilson looked in Mrs. Throckmorton's checkbook to see how much she had in the account. Discovering that her balance was $83,000.00, he told her

that she owed them "thirty-six eighty." Mrs. Throckmorton completed a check for $36.80. The men rejected her check and told Mrs. Throckmorton the bill was $3,680.00. She told them "there is the checkbook." Hollingsworth filled in the amount of $3,680.00 on a check that had been pre-signed by Mrs. Throckmorton. Unknown to Mrs. Throckmorton, Wilson also removed a blank pre-signed check from her checkbook.

Hollingsworth later cashed the check for $3,680.00. Each of the men received $1,000.00 of the proceeds. Wilson also took $200.00 for gas and materials and $400.00 was spent on tires for the truck the parties used.

A local building contractor with thirty years' experience testified for the state that the value of the work performed by Hollingsworth and his companions was $250.00.

In his first point on appeal, Hollingsworth argues that there was insufficient evidence to convict him of stealing in violation of § 570.030.

Section 570.030.1 provides as follows:

A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion.

Deceit as used in § 570.030.1 is defined in § 570.010(6) as follows:

"Deceit" means purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, value, intention or other state of mind. The term "deceit" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed. Deception as to the actor's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise; [2]

---

**2.** As pointed out by Judge Ulrich in his dissent, when interpreting a statute, courts are guided by what the general assembly declares and not what the courts might think the general assem-

In determining whether the evidence is sufficient to support the verdict, an appellate court must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. *State v. Brown*, 660 S.W.2d 694, 698–99 (Mo. banc 1983).

The evidence in the case at bar shows that the defendant, acting together with Wilson and Miller, appropriated Mrs. Throckmorton's property, i.e., her money, by means of deceit.

The record clearly establishes that the three men intended to make false representations to Mrs. Throckmorton in an effort to "swindle" her out of her money when they first approached her. Mrs. Throckmorton was purposefully targeted because she was believed to be and as shown by the evidence, was more likely to be deceived than ordinary persons. Hollingsworth represented the value of his work knowing his representation to be false with the intention of deceiving Mrs. Throckmorton and appropriating her money. Hollingsworth expected Mrs. Throckmorton to rely upon his false representation of value because of her age and condition, as the evidence showed she did.

Mrs. Throckmorton's check for $36.80 was rejected and she acquiesced in Hollingsworth filling in a check which she had already signed for the amount of $3,680.00. It is clear that Mrs. Throckmorton relied upon what she was told, i.e., that the value of the work Hollingsworth and the others had performed was $3,680.00. She was told that her check for $36.80 was incorrect. She took no exception to payment of the amount of $3,680.00. She relinquished her checkbook and acquiesced in a pre-

bly meant to say. *State v. Rellihan*, 662 S.W.2d 535, 545 (Mo.App.1983). I find the language of § 570.030.1 and § 570.010(6) to be clear and unambiguous making misrepresentation of value an element of the crime of stealing by deceit under Missouri law.

Judge Ulrich references two Michigan cases. *People v. Wilde*, 42 Mich.App. 514, 202 N.W.2d 542 (1972) and *People v. Marks*, 12 Mich.App. 690, 163 N.W.2d 506, 507 (1968). Judge Ulrich cites these cases as they discuss and analyze the question of whether intentionally overcharging is criminally actionable as misrepresentation.

Both *Wilde* and *Marks* dealt with a charge of obtaining money by false pretenses. The Michigan Court of Appeals held that the Michigan Legislature has not declared gross misrepresentation of value to be a criminal offense. *People v. Wilde*, 202 N.W.2d at 545.

The relevant Michigan statute is, MICH. COMP.LAWS ANN., § 750.218 (1968), which reads as follows:

MICH.COMP.LAWS ANN., § 750.218 (1968)— False pretenses with intent to defraud

Sec. 218. Any person who, with intent to defraud or cheat, shall designedly, by color of any false token or writing or by any false or bogus check or other written, printed or engraved instrument, by spurious coin or metal in the similitude of coin, or by any other false pretense, cause any person to grant, convey, assign, demise, lease or mortgage any land or interest in land, or obtain the signature of any person to any written instrument, the making whereof would be punishable as forgery, or obtain from any person any money or personal property or the use of any instrument, facility or article or other valuable thing or service, or by means of any false weights or measures obtain a larger amount or quantity of property than was bargained for, or by means of any false weights or measures sell or dispose of a less amount or quantity of property than was bargained for, if such land or interest in land, money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of, shall be of the value of $100.00 or less, shall be guilty of a misdemeanor; and if such land, interest in land, money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of shall be of the value of more than $100.00, such person shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years or by a fine of not more than $5,000.00.

In *Wilde* and *Marks*, the Michigan Court of Appeals held that gross misrepresentation of value was not an offense under the language of the Michigan statute. However, the Michigan Statute, MICH.COMP.LAWS ANN., § 750.218 (1968), is clearly not similar to the Missouri Statutes relevant herein, § 570.030.1 and § 570.010(6). Likewise, the Florida case cited by Judge Ulrich, *Adjmi v. State*, 154 So.2d 812 (Fla.1963), holds that misrepresentation of value is not sufficient to convict a person of grand larceny by false pretenses under Florida law.

We are bound in deciding the question before us by the law in Missouri as established by the Missouri legislature. The Missouri Legislature has made it a crime to steal by deceit which can be shown by misrepresentation of value along with the other necessary elements of the offense. § 570.030.1 and § 570.010(6). I do not find the Michigan cases or the Florida case, cited by Judge Ulrich, to assist in our application of Missouri law.

signed check being filled out in the amount of $3,680.00. If she had not relied upon the representation of value made to her, she would not have consented to payment in said amount.

This was not a matter of individuals attempting to maximize profit. The representations were of material pecuniary significance and were clearly not matters of puffing in an effort to make the best bargain under the circumstances. The evidence of this case was sufficient to establish Hollingsworth's guilt of stealing by deceit.

Hollingsworth's first point is denied.

■ In his second point, Hollingsworth argues that the trial court erred by allowing Marty Miller to testify that he, Hollingsworth and Wilson were involved in a "fraud."

Miller's testimony in this regard was as follows:

Q. All right. Let me ask this, did you work with Wilson and the defendant?

A. Yes I did.

Q. Why don't you tell us what kind of work you did.

A. Termite and landscaping. More or less it was just a fraud ring.

Q. Okay.

A. Scandal.

Q. Okay. Why don't you explain what you mean by that to the jury.

A. It's just going to senior citizens' houses, but you are really not; you are just trying to get in the house and trying to swindle as much money as you can.

At this point, appellant's attorney entered a general objection and stated to the court that he wanted to know if Miller had been given "immunity." The court advised counsel that he would have the right to cross examine the witness and overruled the objection.

On appeal, Hollingsworth reiterates the argument, presented for the first time in his motion for new trial, that Miller's testimony was improper opinion testimony without out a basis in fact.

Appellate review of allegations of error not supported by objection at trial is limited to plain error review. *State v. Daly*, 798 S.W.2d 725, 729 (Mo.App.1990) (citation omitted). Relief under plain error requires that the defendant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989).

As a participant, Miller was competent to state the intent and purpose of the activities of the group. There was no error in the admission of Miller's testimony, plain or otherwise.

Hollingsworth's second point is without merit.

■ In his third point, Hollingsworth argues that the trial court erred by allowing testimony of other crimes.

In this regard Miller testified, without objection, that the three men were involved in a fraud ring that targeted elderly people. Miller stated that they had been operating their fraud scheme in Jackson County and the counties surrounding Jackson County. Later in Miller's testimony, he stated that the "scams" continued with other elderly people after the transaction with Mrs. Throckmorton. Hollingsworth then objected solely on the basis that the testimony was evidence of other crimes. The court sustained the objection and instructed the jury to disregard the answer. Hollingsworth asked for no further relief.

Evidence of other crimes is competent to prove the crime charged when such evidence tends to establish motive, intent, absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or identity of the person charged with the commission of the crime. *State v. Fraction*, 782 S.W.2d 764, 768 (Mo.App. 1989). Evidence of other crimes should be admitted under one of these exceptions

only when the prejudicial effect of the evidence is outweighed by its probative value. *State v. Mallett,* 732 S.W.2d 527, 534 (Mo. banc 1987); *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). This balancing of prejudicial effect and probative value lies within the sound discretion of the trial court. *Id.*

The evidence of which Hollingsworth complains was admissible to show a common scheme. It was certainly not prejudicial to Hollingsworth for the court to have sustained his objection and instructed the jury to disregard evidence that the court could have admitted.

Hollingsworth's third point is denied.

Judgment affirmed.

SHANGLER, J., concurs in majority and files separate concurring opinion.

LOWENSTEIN, C.J., and TURNAGE, KENNEDY, GAITAN and BRECKENRIDGE, JJ., concur in majority and separate concurring opinions.

ULRICH, J., and WASSERSTROM, Senior Judge, dissent in separate dissenting opinions.

NUGENT, Senior Judge, concurs in both dissenting opinions.

BERREY, J., dubitante.

SHANGLER, Judge, concurring.

I concur in the principal opinion of Judge Fenner, but write separately to relieve that opinion of an encumbered response to the dissents.

The defendant Hollingsworth was charged with and convicted of the felony of stealing the property of Mary Throckmorton by deceit. § 570.030, RSMo 1986. The property was $3680 in money obtained by Hollingsworth and his abettors from the personal check given to them by Mary Throckmorton. The check was in payment of the insulation work they told her was needed in the attic. It was made out by the defendant by inscribing "$3680" upon a check already signed by Throckmorton. There was evidence that the value of the

work done by Hollingsworth and his cohorts was $250.

A person who appropriates property of another with the purpose of depriving, either without the consent of the other or by deceit, commits the crime of stealing. § 570.030.1, RSMo 1986. *Deceit,* within the context of that definition of offense means, "purposely making a representation which is false and which the actor does not believe to be true and *upon which the victim relies, as to a matter of* fact, law, *value,* intention or other state of mind." (Emphasis added)

The principal opinion holds, and I agree, that rejection by Hollingsworth of the check for $36.80 made out to him by Throckmorton upon being informed that the bill for the work was "thirty-six eighty", and the demand for payment of $3680 was a representation of the value of the work performed. I agree also that the subsequent payment of $3680 by Throckmorton to Hollingsworth was in reliance on that representation.

The dissent by Judge Ulrich proceeds from a faulty reading of the majority rationale, and so inevitably comes to an unneeded disagreement. The premise of the dissent—that the principal opinion holds that Hollingsworth's "price of $3680 misrepresented the value of the work performed, a material *fact* upon which the victim relied" [emphasis added]—is mistaken. The majority does indeed hold that the price of $3680 misrepresented the value of the work performed, not as a purposely false representation of *fact,* but of *value.* That misreading leads the dissent into a discussion of the comparative law of criminal deceit in Michigan and Florida, the distinction as opinion rather than fact that decisions under those statutes impose upon "inflated representations of value," and then the inequivalence of *price* and *value* as the measure of the judicial construction of stealing by deceit statutes.

Those statutes, however, are not our statutes, and those decisions are not our decisions. Deceit is proven under § 570.030, a representation which is false and which the actor does not believe to be true

and upon which the victim relies, as to a matter of *fact or value.* There is no cleavage in our statute between fact and value, or in our decisions between opinion and fact as the test for an actionable misrepresentation of value. The dissent, after the discussion of the foreign statutes and decisions, acknowledges that much.

Nor does the inequivalence of *price* and *value* in other, theoretical contexts, bear on the meaning of *value* a court is bound to apply to § 570.010.6 to determine whether the crime of stealing by means of deceit is proven under § 570.030. Section 570.020(1), RSMo 1986, sets out a clear standard for the determination of value:

> Except as otherwise specified in this section, *"value"* means the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime.

The price paid for a property or service at the time of the crime under this formulation is evidence of its value. *State v. Carter,* 544 S.W.2d 334, 338[7] (Mo.App.1976). The presentation by Hollingsworth of the "bill" for $3680 for the work done, therefore, may be properly understood by an ordinary person to be a representation that the value of the services was $3680, and the payment by Throckmorton may be understood as her reliance on that representation of value.

The dissent has concern that under the majority rationale "[a]ny price demanded that includes a sum for profit may be criticized as excessive [so that] potentially, every businessman who charges a profit may be subjected to criminal prosecution under § 570.030 for stealing by deceit, even though he has not misrepresented his product or the services rendered." The statute, however, requires *purpose.* "It makes clear that the actor must *purposely* make a representation which is false, which he does not believe is true and upon which the victim relies." § 570.010 Comment to Proposed Code, (7) "Deceit." The statute also does not punish puffing, unless by statements likely to deceive "ordinary persons in the group addressed." *Id.;* § 570.010(6).

The evidence here was that the representation of value was not only likely to deceive "ordinary persons in the group addressed," but was purposely designed to ensnare them. The target of Hollingsworth and his henchmen were "senior citizens' houses or elderly people," houses with the "OATES member signs in the doors and windows." The age group of people they normally "went after" were those in the "[s]ixties on up to seventies and eighties." That was the group addressed. They gained entrance by an offer of free inspection of the house for pest control, and after that it was "just more or less telling them lies." It was "just frauding people out of their money," one member testified, "you just try to get as much money as you can out of the job." These were not the antics of an honest commercial enterpriser whose overcharge is merely an incident of puffing, but of a purposeful stealing by fraud and deceit from an 89 year old.

The statute draws the distinction between representations that are no more than puffing and representations of deceit in terms of what is likely to deceive ordinary persons in the group addressed. § 570.010(6). It leaves to the jury "to draw on its everyday experience to decide whether the misrepresentation involved exceeds acceptable limits." § 570.010 Comment to 1973 Proposed Code, (7) "Deceit." The evidence was more than enough for a jury to have found that the overcharge Hollingsworth presented to Throckmorton for payment was a misrepresentation of value that was likely "to deceive ordinary persons in the group addressed," and so not simply puffing.

The dissent acknowledges that the conduct of the Hollingsworth troupe was "villainous, reprehensible and possibly criminal" as a coerced appropriation of Throckmorton's property. It may very well be that stealing by coercion could have also been charged and proven. That does not diminish the force of the same evidence as proof of stealing by deceit under the same

statute. It is not understandable why, because—as the dissent has it—"[s]he may have paid the sum demanded because she was coerced," the same evidence may not prove that she relied on the representation of the value of the work when she paid the money.

The separate dissent of Judge Wasserstrom disagrees that the reliance element of § 570.030.1 and § 570.010(6) was proven *prima facie* because the check that ultimately constituted payment had been presigned by Throckmorton *before* the transaction. "Nor [the dissent continues] did Mrs. Throckmorton write out the balance of the check in reliance on the representation. That completion was done by Hollingsworth or one of his accomplices." The dissent thus comes to the conclusion that the circumstances show only her inaction, an inaction that, under the circumstances was not an acquiescence and so not a reliance. That argument is dispelled by simple principles of agency. There was evidence that Throckmorton made out the first check for $36.80, which was rejected, and then was told by Hollingsworth that the "thirty-six eighty" meant $3680. She then directed Hollingsworth to the checkbook, and he wrote out a check in that amount.

The separate dissent also reads the evidence to mean that "Mrs. Throckmorton turned over her checkbook before Hollingsworth said anything about price," so that the payment could not have been in reliance on a representation of value. It is enough to say that the jury could reasonably have understood from the Throckmorton testimony that she at first understood the charge as $36.80, and made out a check in that amount, and from the testimony of one of the accomplices, that Throckmorton said "there is the checkbook"—and thereupon Hollingsworth made out the subsequent check for $3680—that the second check was authorized by Throckmorton after she was told that $3680 was the actual sum demanded for payment. It was evidence, that is, sufficient to show that Throckmorton relied on Hollingsworth's representation of the value of the work was $3680 in authorizing the inscription of that sum upon the check already signed.

I concur in the majority opinion.

ULRICH, Judge, dissenting.

I respectfully dissent. Billy Hollingsworth was convicted by a jury of stealing by deceit in violation of § 570.030.3(1), RSMo 1986. The facts are not disputed. The issue is whether the evidence sufficiently proves Mr. Hollingsworth's guilt.

Section 570.030, states in part:

1. *A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof,* either without his consent or *by means of deceit* or coercion.

(Emphasis added). Thus, the essential elements of stealing under the statute are (1) an appropriation of property or services of another (2) with the purpose to deprive the other thereof (3) accomplished without the owner's consent or by means of deceit or by means of coercion. *State v. Bradshaw,* 643 S.W.2d 834, 836 (Mo.App.1982).

The state contends, and the principal opinion holds, that Mr. Hollingsworth stole Mrs. Throckmorton's check by deceit.[1] The charge does not contend that Mrs. Throckmorton was coerced. "Deceit," for purposes of the crime of stealing by deceit, means purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, value, intention or other state of mind. *State v. Davis,* 675 S.W.2d 652, 655 (Mo. App.1984); *see also* § 570.010(6), RSMo 1986.

The parties' positions regarding certain facts are notable. Significant is the state's position that it neither contests the need for the services rendered by the defendant

---

1. The information charged that the defendant, in concert with others, deceitfully appropriated $3,680.00 from Mrs. Throckmorton "by stating to [her] that the insulation work consisting of labor and materials by defendant ... on her residence ... were of a value of $3,680.00, when, said statement was false and defendant ... knew such statement was false."

nor does it contest that the services were performed. Also notable, Mr. Hollingsworth does not dispute that he and his accomplices received an excessive amount of money from Mrs. Throckmorton for the services performed, and the evidence establishes that they intended to obtain an excessive sum.

### Misrepresentation

For the evidence to be sufficient to convict Mr. Hollingsworth of the offense charged, the intentional overcharging by Mr. Hollingsworth and his colleagues for their services and the material they provided must itself be a false representation contemplated by §§ 570.010(6) and 570.030. The information alleges that Mr. Hollingsworth falsely stated to Mrs. Throckmorton that the value of the work performed on her residence was $3,680. The state acknowledged no proof was offered that Mr. Hollingsworth or his colleagues made a specific statement as to the value of the work they performed. The principal opinion holds that the demand for payment attributable to Mr. Hollingsworth falsely implied that the value of the services rendered and the material used to correct leaks and replace insulation had a value of the sum demanded. The state's expert testified that the value of the work performed was approximately $250. Thus, the principal opinion holds that Mr. Hollingsworth and his colleagues' price of $3,680.00 misrepresented the value of the work performed, a material fact upon which the victim relied, and satisfied that necessary element of the crime charged.

The state relies on the case of *State v. Smith*, 324 S.W.2d 702 (Mo.1959), as support for its position that Mr. Hollingsworth's knowing demand for and acceptance of Mrs. Throckmorton's excessive check for the work performed (overcharging) was sufficient evidence by which the jury could find deceit, an element of the offense. The state's reliance on *Smith* is misplaced. In *Smith*, the defendant performed electrical work on the home of an eighty-three year old woman victim and overcharged her for the work he performed. *Id.* at 703–04. Unlike this case, however, in *Smith*, the jury could find from the testimony that the victim relied upon the defendant's representations, made before he performed the work, that he saw fire emanating from electrical wires in her house, that the electrical system was defective and that the defective electrical system might cause the house to burn down unless it were fixed. *Id.* The *Smith* jury could also have found from the testimony that these representations were false and that they were made to deceive the victim. *Id.* at 705.

In this case, there was no evidence that the defendant and his colleagues misrepresented to Mrs. Throckmorton the necessity of the work done or that undesired consequences would occur if the work were not done. Unlike this case, the conviction in *Smith* was not solely dependent on the defendant intentionally overcharging the victim. In *Smith*, the defendant could have been convicted regardless what price he charged, and perhaps was, because he induced the victim to permit him to perform the work by falsely representing the necessity for it. The state has provided no cases, and the principal opinion cites none, to support its theory that intentionally overcharging alone is a misrepresentation contemplated by § 570.030 which, if paid, satisfies the element of deceit under the statute.

At least two other jurisdictions have considered whether intentionally overcharging is criminally actionable as a misrepresentation. In *People v. Marks*, 12 Mich.App. 690, 163 N.W.2d 506, 507 (1968), the Michigan Court of Appeals considered whether gross overcharging constitutes a fraudulent misrepresentation under a Michigan statute defining the crime of obtaining property under false pretenses. Oliver Marks made repairs on Elizabeth Gentz's chimney. *Id.* Ms. Gentz was seventy-three years old. *Id.* Mr. Marks worked on the chimney for approximately one and a half hours and charged Ms. Gentz $612. *Id.* She assented to pay $600 and was accompanied by Mr. Marks and one of his associates into town to facilitate Ms. Gentz withdrawing $600 from a bank. *Id.* She

paid Mr. Marks $600. A qualified witness testified at a hearing on Mr. Marks' motion to dismiss the information that he valued the repairs made to Ms. Gentz's chimney at $25. *Id.* The court in *Marks* stated, "[a]n essential element of the crime is a fraudulent misrepresentation, and the gross overcharge does not constitute fraudulent misrepresentation." *Id.*

In the case of *Adjmi v. State,* 154 So.2d 812 (Fla.1963), the Florida Supreme Court reviewed the convictions of two people for the crime of larceny by false pretense. *Id.* at 814. The victim, in loaning money to the defendants, relied solely on the defendants' representation of the value of certain merchandise delivered to her as security for money she loaned. *Id.* at 818. The court, considering whether a representation of the value of property is actionable as a misrepresentation under the Florida criminal false pretense statute, stated that "[t]he law is well settled that in ordinary business transactions statements of value are mere expressions of opinion, and that erroneous statements of value will not support even a civil action for rescission or cancellation." *Id.* (quoting *Criner v. State,* 92 Fla. 483, 109 So. 417, 420 (1926). The court also stated that "[i]t is a matter of universal knowledge among people of common sense and experience that men's ideas of the values of items of property vary widely, and that the owners of property are inclined to overestimate its value." *Id.* And finally, the court said, "Value is indeed a matter of opinion and the crime of larceny by false pretenses requires a misrepresentation of a past or existing fact as distinguished from mere opinion." *Id.*

In another case, *People v. Wilde,* 42 Mich.App. 514, 202 N.W.2d 542 (1972), the Michigan Court of Appeals further discussed the principle expressed in *Marks.* In *Wilde,* two defendants were convicted of obtaining money by false pretenses in violation of statute. *Id.* at 544. Ronald Riehs' automobile had been damaged in an accident. *Id.* Prior to taking his automobile to the defendant's Do–Right Collision Automobile Repair shop, Mr. Riehs obtained two estimates of the cost to repair the damage to his vehicle. *Id.* The first estimate was for $202.61, and the second estimated cost of repair, made by an agent of the insurance company that insured Mr. Riehs' automobile, was in the sum of $622.33. The disparity between the two estimates reflected the "kickback" in the higher estimate to be paid by the defendant to the insurance agent who made the estimate. The higher estimate also included a $60 charge to repair the trunk lid although the trunk lid was not damaged. *Id.* The insurance company paid the amount charged, $622.33, and the agent and the repair shop proprietors were charged with the crime of obtaining money by false pretense. *Id.* The insurance agent entered a guilty plea, and Mr. Wilde was found guilty by jury. *Id.*

The court in *Wilde* distinguished the prior holdings in *Marks.* The court noted that in *Marks* the overcharge was for work completed whereas in *Wilde,* the "defendants used inflated estimates upon which others may rely prior to the work being initiated." *Id.* at 544. Additionally, the court in *Wilde* stated:

> The defendant's conduct in *Marks* was considered reprehensible because it involved a misrepresentation of the value of the services rendered. Yet, the *Marks* Court did not find such a misrepresentation to be fraudulent and violate the statute. The reason underlying this variance can be found in the distinction between opinions and facts. The defendant's misrepresentation of value in *Marks* merely involves an inflated opinion as to the value of his services. Each citizen is capable of protecting himself since he is placed upon notice that the representation is based upon an opinion which is subject to distortion or deceit. As offensive as cases involving people being duped by gross misrepresentations of value may be, the Legislature has failed to make such chicanery a crime. Thus, the label "overcharge" is applied to those cases involving indefensible departures in a person's opinion of the value of his services from the established standard.

*Id.* The court went on to say:

> Persons relying upon misrepresentations of fact are no longer placed upon notice

that the inducement is subject to the speaker's whim or caprice since they are regarded as truths. The confidence placed in alleged facts and the diminished ability of people to protect themselves against fabricated facts require criminal sanctions to diminish the number of frauds. This distinction between misrepresentations of opinion and fact provide the vehicle for distinguishing between "overcharges" and false pretenses.

*Id.* The court in *Wilde* affirmed the conviction because the inflated estimate included a $60 charge for non-existent repair work to Mr. Riehs' trunk lid, a misrepresentation of fact. *Id.*

The Michigan and the Florida cases cited are instructive regarding the rationale for determining which representations may be criminally actionable. However, Missouri's stealing by deceit statute is different from Michigan's or Florida's criminal false pretense statutes. Section 570.030 makes stealing by deceit a crime. Section 570.010(6) defines "deceit" as the word is used in chapter 570 and states in part:

"**Deceit**" means purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, *value*, intention or other state of mind. The term "deceit" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed. Deception as to the actor's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise; . . . .

(Emphasis added). The meaning of the word "value" and the legislature's intent in including "value" within § 570.010(6) must be further examined.

In the present case, Mr. Hollingsworth stated that the charge or price for the work performed was $3,680.00. Value and price are, however, not necessarily synonymous terms. *Emmco Ins. Co. v. Howell*, 275 Ala. 270, 154 So.2d 28, 31 (1963). *See also, People ex rel. Buck v. Rapp*, 36 N.Y.S.2d

790, 796 (Sup.Ct.1942); *Theiss v. Weiss*, 166 Pa. 9, 31 A. 63, 66 (1895); *Chicago, K. & W.R. Co. v. Parsons*, 51 Kan. 408, 32 P. 1083, 1084 (1893). The Alabama Supreme Court stated in *Howell:*

The terms "price" and "value" . . . are apt to be sometimes used interchangeably. . . . "It is of course, more to be desired that each term be employed with perfect exactness for 'price' is not necessarily the equivalent of 'value.' The former tokens agreement upon a value by the parties in interest; while the latter is, as a rule, the general estimate of the pecuniary equivalent of the subject of inquiry."

154 So.2d at 31 (quoting *Scruggs & Echols v. Riddle*, 171 Ala. 350, 54 So. 641, 645 (1910)). Therefore, "[v]alue and price are not the equivalent of each other. 'Value' is a word more comprehensive than 'price.' *People v. Carillo*, 42 Misc.2d 74, 246 N.Y.S.2d 692, 700 (App.Term.1964) (citing *Marriner v. John L. Roper Co.*, 112 N.C. 164, 16 S.E. 906, 907 (1893)).

In interpreting § 570.010(6), courts must be guided by the words of the legislature and not by what this court may think the legislature meant to say. *State v. Rellihan*, 662 S.W.2d 535, 545 (Mo.App.1983). Courts may not read into a statute words not found within the statute when the language of the statute is clear. *Id.* In particular, in interpreting a penal statute, courts must construe the statute liberally in favor of the defendant and strictly against the state. *State v. Hornbeck*, 707 S.W.2d 809, 810 (Mo.App.1986). "A criminal statute will not be construed to include offenses, acts or persons which are not clearly described and provided for within the spirit and letter of the statute." *Id.*

Section 570.010(6) proscribes misrepresentations as to value. However, a statement of price is not equivalent to a statement of value. A statement of value requires a more comprehensive representation than a mere statement of price. The state and the principal opinion fail to direct attention to any additional statement or act on the part of Mr. Hollingsworth or his colleagues that elevates the statement of

price to a more comprehensive statement of value. A mere statement as to price is not specifically proscribed by § 570.010(6) and should not be construed to include a statement of price when such an act is not clearly described within the statute.

To hold that Mr. Hollingsworth's intentional overcharging of Mrs. Throckmorton, arguendo, an unwitting payor, for work performed, without more, encompasses the elements of misrepresentation and reliance necessary to prove deceit under § 570.030 is potentially dangerous. Application of the law expressed in the principal opinion subjects every perceived overcharging to potential criminal liability as stealing. The concern is that every representation that an object or work performed has a certain value is subject to different opinions. Any price demanded that includes a sum for profit may be criticized as excessive. How can the criminal law set rules or objective standards as to what is clearly excessive? In the close case, how does one distinguish when excessive profit becomes criminal? A price that is clearly excessive in the opinion of one juror may not be excessive in the mind of another. Thus, potentially, every businessman who charges a profit may be subjected to criminal prosecution under § 570.030 for stealing by deceit, even though he has not misrepresented his product or the services rendered. Anyone who sells a product or a service for what he believes to be a fair profit will be uncertain whether he may be convicted of the crime of stealing because the amount of profit may be considered excessive by someone else.

This interpretation contained within the principal opinion results in an unconstitutional application of the statute. The principal opinion's interpretation violates the constitutional mandate that penal statutes "provide explicit standards for those who apply them ..." and "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972).

## Reliance

To prove that Mr. Hollingsworth was guilty of stealing by deceit, the state was also compelled to prove that Mrs. Throckmorton relied on a false representation. *Davis,* 675 S.W.2d at 655; § 570.010(6). A price to be charged by Mr. Hollingsworth in anticipation of the work to be performed was not discussed. Thus, Mrs. Throckmorton could not have been induced by a quoted price to permit performance of the work. Neither does the evidence prove that Mrs. Throckmorton paid the money in reliance on an implied representation that the value of the work performed was the amount demanded. Payment alone by Mrs. Throckmorton is insufficient evidence to prove beyond a reasonable doubt that she relied on the misrepresentation. She may have paid the sum demanded because she was coerced, but coercion was not charged. When the demand for payment was initially made to her, she understood the amount to be $36.80 and wrote a check in that sum. Mr. Hollingsworth and his colleagues rejected the check and restated their demand clearly as $3,680. Mrs. Throckmorton did not write the check in that sum, one of the men present wrote it. When Mrs. Throckmorton's neighbor returned to visit her shortly after the men had left, Mrs. Throckmorton was excited about having paid the men $3,680. This is the only evidence relating to whether Mrs. Throckmorton was deceived by the "misrepresentation" that the value of the work performed was the amount demanded. This evidence was insufficient to prove that Mrs. Throckmorton relied on the purported misrepresentation as required to prove deceit under the state's theory.

Mr. Hollingsworth and his accomplices schemed to overcharge an elderly, infirm victim for services they rendered. Their conduct was villainous, reprehensible and possibly criminal under another theory, but the state chose to prove the defendant stole by appropriating Mrs. Throckmorton's money by deceit pursuant to § 570.030. The state's theory required a misrepresentation and reliance by the victim to prove

deceit. The state did not prove that Mr. Hollingsworth falsely represented the necessity of the work performed, that he otherwise falsely induced Mrs. Throckmorton to accept the services or that the work was not performed as represented. The defendant and his colleagues performed the work they agreed to perform. They did not represent that they would do more than they did. They did not represent that the material sold was something different than what it was, and there was no evidence that they misrepresented the necessity for the work. Neither did the state prove that Mrs. Throckmorton relied on the purported misrepresentation. The additional fact that the defendant and his cohorts approached Mrs. Throckmorton because they believed they could overcharge her does not cure the state's case and prove deceit and a violation of § 570.030.

The state's evidence was insufficient to prove the necessary elements of the offense charged.

Reluctantly, I would reverse the judgment.

WASSERSTROM, Senior Judge, dissenting.

I respectfully dissent, for the reason that the state failed to prove any reliance by Mrs. Throckmorton on any statement made by Hollingsworth.

The statement alleged to be the criminal misrepresentation consists of the statement that the charge for the repair work was $3,680. That statement was not made until after the work was already completed, and therefore Mrs. Throckmorton obviously did not place any reliance on it in authorizing the work.

Reliance, if there was any, had to be with respect to Mrs. Throckmorton's making payment. However, the payment here was accomplished without any action on the part of Mrs. Throckmorton. She did write a check for $36.80, but that check was discarded and does not constitute the payment upon which the information is founded. The $3,680 check which did constitute the payment had been presigned by Mrs. Throckmorton along with others at some point in time *before* the transaction in question and certainly was not signed in reliance on Hollingsworth's representation. Nor did Mrs. Throckmorton write out the balance of the check in reliance on the representation. That completion was done by Hollingsworth or one of his accomplices.

That leaves the situation as one of mere inaction by Mrs. Throckmorton. Inaction might in some circumstances permit an inference of acquiescence and thus reliance, but not here. Mrs. Throckmorton had already shown her failure to believe such a high price, by her making out the $36.80 check. Her inaction following the refusal of that check is readily understandable. She, an infirm, frail 89 year old woman, was surrounded by three young men who were working their own will with her presigned checks. There was little if anything she could do to stop them, and as she said in her statement, it was hard for her to think under the circumstances existing.

Her lack of acquiescence appears quite clearly from the testimony of her neighbor who came over shortly after the three men left. The neighbor found Mrs. Throckmorton in an excited state and very upset by the treatment she had just received.

Conviction under § 570.030, as defined by § 570.010(6), requires proof that the victim relied on the misrepresentation alleged. The record here fails to show such proof. The state's brief makes no effort to even discuss this requirement. The majority opinion attempts to find reliance by the testimony of Miller (one of the three confederates) that when the three men came in from finishing their work and told Mrs. Throckmorton "that we got everything took care of," she responded "there is the checkbook." I read that testimony to mean that Mrs. Throckmorton turned over her checkbook before Hollingsworth said anything about price. If so, her statement could not indicate reliance on Hollingsworth's fixing a price, which had not yet happened. The majority interprets the record so as to place Throckmorton's statement about her checkbook later in time than Hollingsworth's "thirty-six eighty." At the very best, the testimony about the

timing of the statements is vague, ephemeral and insubstantial. It does not provide a sufficient basis upon which a jury could reasonably find reliance beyond a reasonable doubt by Throckmorton, one of the essentials for conviction.

I would reverse the judgment.